Opinions of the Justices to the House of Representatives.

*Constitutional Law,* Self incrimination, Taxation, Separation of powers of government. *Taxation,* Income tax. *Words,* "Criminal investigation," "Proper judicial order."

On the question propounded by the House of Representatives, whether it would be constitutional to provide by statute for the disclosure of information contained in income tax returns "in a criminal investigation or criminal prosecution by the Attorney General or any district attorney upon proper judicial order," Qua, C.J., Lummus, Ronan, Wilkins, Spalding, & Williams, JJ., were of the opinion that the proposed statute would not violate the immunity against self incrimination given by art. 12 of the Declaration of Rights; that, interpreting the words "criminal investigation" to mean a proceeding in a court and the words "upon proper judicial order" as providing for a proper discovery by appropriate judicial process, the proposed statute would not impose nonjudicial duties on the courts contrary to the doctrine of separation of powers in art. 30 of the Declaration of Rights; and that so construed the proposed statute would be constitutional; Counihan, J., was of the opinion that the proposed statute would be unconstitutional as in violation of such immunity against self incrimination.

On April 7, 1952, the Justices submitted the following answers to a question propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court submit this answer to the question set forth in an order adopted by the House on February 11, 1952, and transmitted to the Justices on February 15, 1952. A copy of the order with the proposed act which accompanied it is affixed hereto.

The question reads as follows: "Is it constitutionally competent for the General Court to amend under the provisions of section 58 of chapter 62 of the General Laws, or

otherwise, to provide for the disclosure of information contained in tax returns filed under the provisions of said chapter 62 with the Commissioner of Corporations and Taxation in a criminal investigation or criminal prosecution by the Attorney General or any district attorney upon proper judicial order."

General Laws (Ter. Ed.) c. 62, § 58, is the section which renders punishable the disclosure by the commissioner of corporations and taxation or by any deputy, assistant, clerk or assessor, or other employee of the Commonwealth, or of any city or town therein, to any person but the taxpayer or his agent, of any information, other than the taxpayer's name and address, contained in any income tax return filed under c. 62, except in proceedings to collect the tax or for the purpose of criminal prosecution under that chapter. By the pending legislation it is proposed to amend this section so that the exception will read, "except in proceedings to collect the tax or for the purpose of any criminal investigation or criminal prosecution by the attorney general or any district attorney upon proper judicial order." The whole section would then read as follows: "Section 58. The disclosure by the commissioner, or by any deputy, assistant, clerk or assessor, or other employee of the commonwealth, or of any city or town therein, to any person but the taxpayer or his agent, of any information whatever contained in or set forth by any return filed under this chapter, other than the name and address of the person filing it, except in proceedings to collect the tax or for the purpose of any criminal investigation or criminal prosecution by the attorney general or any district attorney upon proper judicial order, shall be punishable by a fine of not more than one thousand dollars, or by imprisonment for not more than six months, or both, and by disqualification from holding office for such period, not exceeding three years, as the court determines."

It is noted that the question transmitted to us does not ask whether the particular proposed amendment is constitutional. It asks generally whether it is constitutionally

competent to provide for the disclosure in a criminal investigation or criminal prosecution by the Attorney General or any district attorney upon proper judicial order of information contained in income tax returns.

There is no general constitutional requirement of secrecy for tax returns. Secrecy has been created by statute and as matter of grace only. *Brackett* v. *Commonwealth*, 223 Mass. 119, 126. *Leave* v. *Boston Elevated Railway*, 306 Mass. 391. *United States* v. *Dickey*, 268 U. S. 378, 386. Rights created by statute can be taken away by statute, except in such manner as to violate some express provision of the Constitution.

Perhaps the first point which should be considered as bearing upon the constitutionality of the proposed disclosure is whether it would violate that part of art. 12 of the Declaration of Rights which provides that no subject shall be compelled to accuse or furnish evidence against himself. Would this provision be violated if the subject is compelled under penalty first to file the return under oath (G. L. [Ter. Ed.] c. 62, § 22, as appearing in St. 1939, c. 486, § 2; § 24, as appearing in St. 1943, c. 45, §. 2) and then to be confronted with it in a criminal investigation or prosecution? This objection is answered by the reasoning and decision by Mr. Justice Holmes in *United States* v. *Sullivan*, 274 U. S. 259, where the court held that the citizen is required to file a return according to law and may object to incriminating matter in the return, but cannot do so for the first time later. The same case contains an intimation that the Fifth Amendment to the Constitution of the United States should not be construed to authorize a refusal to state the amount of one's income because it had been made in crime. 274 U. S., at pages 263–264. It has been stated or held in a number of cases both here and elsewhere that if a person is bound by law to make return or disclosure of facts which will involve crime only where the person sees fit to commit crime there is no violation of the constitutional immunity. *Commonwealth* v. *Prince*, 313 Mass. 223, 231–232. *Commonwealth* v. *Joyce*, 326 Mass. 751, and cases

cited. Wigmore on Evidence (3d ed.) §§ 2259c, 2259d. See *Emery's Case*, 107 Mass. 172.

In our opinion the proposed statute would not be unconstitutional as in violation of the provision against self incrimination. Whether, if enacted, it could constitutionally be applied so as to permit the use against the taxpayer of returns filed before the amendment at a time when the statute gave him the protection of secrecy, so that he then had no occasion to claim his privilege, is not within the scope of the question. Upon this point, which relates to the application of the amendment to returns filed before its enactment, we express no opinion.

The next point which occurs to us is whether the proposed amendment would impose upon the courts nonjudicial duties contrary to the doctrine of the separation of powers embodied in art. 30 of the Declaration of Rights. This involves a consideration of the construction or interpretation to be placed upon certain words contained in the question transmitted to us, which is in very general terms. What is meant by "criminal investigation"? While this, taken by itself, might include an investigation by the Attorney General or a district attorney in his own office or elsewhere out of court, we think it reasonable to assume because of the accompanying phrase "upon proper judicial order" that there is intended the more restricted reference to a criminal investigation which is a proceeding in some court such as the presentation of evidence before a grand jury or possibly at an inquest. See *Thaden* v. *Bagan*, 139 Minn. 46, 50. We do not intend to intimate what might be our opinion were we dealing with a broader interpretation of "criminal investigation."

We now come to the phrase "upon proper judicial order." The word judicial seems to imply that ordinary forms of judicial proceedings should be followed so far as applicable; but we do not think that it goes so far as to require notice to the taxpayer and a hearing. If these were required the purpose of the proceeding would be practically defeated. No substantive rights are involved. The only question is

whether a bar which the Legislature has interposed to the admission of certain pertinent evidence is to be removed. The Legislature could remove the bar altogether if it saw fit. The order must be "proper" in the sense that it must be clear and definite. It must also be "proper" in the sense that it carries out the purpose of the statute; that is to say, that it grants reasonable and pertinent discovery in an "investigation" undertaken in good faith, looking toward the possible prosecution of crime, and that it has in it no element of persecuting the citizen or prying into his affairs from ulterior motives. See *S. D. Warren Co.* v. *Maine Central Railroad*, 126 Maine, 23, 27. A proper judicial order must also be made by a proper judge. Commonly this would mean a judge of the court in which the proceeding is pending.

We are of opinion that the proposed statute, construed as we have construed it, would supply the basis for an order of a judicial character founded upon judicial principles and would not infringe upon the doctrine of separation of powers. *LaChapelle* v. *United Shoe Machinery Corp.* 318 Mass. 166.

We think that the answer to the question, as we have construed it, should be "Yes."

> STANLEY E. QUA.
> HENRY T. LUMMUS.
> JAMES J. RONAN.
> RAYMOND S. WILKINS.
> JOHN V. SPALDING.
> HAROLD P. WILLIAMS.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned, one of the Associate Justices of the Supreme Judicial Court of Massachusetts, submits this separate answer to the question set forth in an order adopted by the House on February 11, 1952, which is described in

the answer of the majority of the Justices submitted here-with.

General Laws (Ter. Ed.) c. 62, § 22, as appearing in St. 1939, c. 486, § 2, so far as pertinent reads, "Every individual inhabitant of the commonwealth, including every partner-ship, association or trust, whose annual income from all sources exceeds two thousand dollars shall annually make a return of his entire income," with exceptions not here material. Section 24, as appearing in St. 1943, c. 45, § 2, requires that such returns be made under the penalties of perjury and "shall be made in such form as the commissioner prescribes, and shall contain such further information *as he deems pertinent*" (emphasis supplied). Section 28 pro-vides that "If the commissioner shall, from information derived from the return *or otherwise*, be of opinion that any person . . . may have failed to file a return, or to include in a return filed, either intentionally or through error, all the sources of his taxable income, he may require from such person a return or a supplementary return on oath, in such form in each individual instance as the commissioner pre-scribes, of all the sources from which the taxpayer received any income . . . . If from a supplementary return *or other-wise* the commissioner finds that any sources of taxable income have been omitted from the original return, he may require the amount of income from each source of taxable income so omitted to be disclosed to him on oath of the person liable for the tax, and *added to the original return*" (emphasis supplied).

Section 58 reads, "The disclosure by the commissioner, or by any deputy, assistant, clerk or assessor, or other employee of the commonwealth, or of any city or town therein, to any person but the taxpayer or his agent, of any information whatever contained in or set forth by any return filed under this chapter, other than the name and address of the person filing it, except in proceedings to collect the tax or for the purpose of criminal prosecution under this chapter, shall be punishable by a fine of not more than one thousand dollars, or by imprisonment for

not more than six months, or both, and by disqualification from holding office for such period, not exceeding three years, as the court determines." It is this section which now provides immunity to a taxpayer against disclosure of information in a return for any purpose except in proceedings to collect the tax or for the purpose of criminal prosecution under c. 62.

The question propounded to us asks generally whether it is constitutionally competent to provide for disclosure in a criminal investigation or criminal prosecution by the Attorney General or a district attorney (other than that growing out of a violation of c. 62), upon proper judicial order, of information contained in income tax returns required to be furnished by a person by virtue of §§ 22, 24, and 28. In other words, is it constitutionally competent to extinguish the privilege and immunity at present afforded by § 58 of c. 62 for the purpose of aiding in a criminal investigation or criminal prosecution of a taxpayer (other than for violations of c. 62) by the Attorney General or a district attorney even "upon proper judicial order"?

I am of opinion that the answer to the question depends upon the meaning of the words in our Declaration of Rights, Part I, art. 12, of the Constitution of the Commonwealth of Massachusetts, the first sentence of which reads, "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself." Obviously this provision of the Bill of Rights may not be overcome or altered by legislative enactment or judicial order.

The language of art. 12 was interpreted with unusual clarity and with fundamental appreciation of the problem involved in *Emery's Case,* 107 Mass. 172. While it is true that the question there presented was not exactly the same as what is here under consideration, the entire principle of self incrimination was carefully considered and the language of *Emery's Case* abundantly affords a decisive answer to the question here presented. I deem it so relevant that I quote

from it profusely. At pages 180–181 it says, "The petitioner relies solely upon the privilege of exemption from answering the inquiry put to him, which he claims, under the twelfth article of the Declaration of Rights of the inhabitants of the Commonwealth of Massachusetts. If that is applicable to his case, it is his shield, and he is entitled to be discharged; otherwise, not. The provision is this: 'No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself.' The whole article has such reference to proceedings for the punishment of criminal offences as to justify the designation in the margin by the two words 'Prosecutions regulated.' But in that relation, the sentence above quoted from the article plainly presents three distinct aspects. The first branch of the sentence defines the conditions upon which alone the subject can be put upon his trial for any offence. The second forbids that he should be compelled to accuse himself. By the narrowest construction, this prohibition extends to all investigations of an inquisitorial nature, instituted for the purpose of discovering crime, or the perpetrators of crime, by putting suspected parties upon their examination in respect thereto, in any manner; although not in the course of any pending prosecution. But it is not even thus limited. The principle applies equally to any compulsory disclosure of his guilt by the offender himself, whether sought directly as the object of the inquiry, or indirectly and incidentally for the purpose of establishing facts involved in an issue between other parties. If the disclosure thus made would be capable of being used against himself as a confession of crime, or an admission of facts tending to prove the commission of an offence by himself, in any prosecution then pending, or that might be brought against him therefor, such disclosure would be an accusation of himself, within the meaning of the constitutional provision"; at page 182, "The third branch of the provision in the Constitution of Massachusetts, 'or furnish evidence against himself,' must be

equally extensive in its application; and, in its interpretation, may be presumed to be intended to add something to the significance of that which precedes. Aside from this consideration, and upon the language of the proposition standing by itself, it is a reasonable construction to hold that it protects a person from being compelled to disclose the circumstances of his offence, the sources from which, or the means by which evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him. For all practical purposes, such disclosures would have the effect to furnish evidence against the party making them. They might furnish the only means of discovering the names of those who could give evidence concerning the transaction, the instrument by which a crime was perpetrated, or even the corpus delicti itself"; and at pages 183–184, "Committees of the legislature, or commissioners acting under its order, to inquire into any supposed failure to enforce the laws, if freed from the restrictions of the Constitution in this particular, may be found useful and efficient as auxiliaries of the grand juries of the Commonwealth. In this way, parties exposed to prosecutions would find their constitutional protection to have failed them. It is the capability of abuse, and not the probability of it, which is to be regarded in judging of the reasons which lie at the foundation, and guide in the interpretation, of such constitutional restrictions."

*Emery's Case* is still the law of our Commonwealth for it was affirmed not long ago in *Commonwealth* v. *Prince*, 313 Mass. 223. That was a case where there was a reversal of a conviction of a defendant charged with having refused, in violation of a statute regulating labor of minors, to give a school attendance officer the name of a minor in the defendant's custody, who in the defendant's presence was offering a magazine for sale on a city street. At page 231 the present Chief Justice said, "The supervisor of attendance was in effect asking the defendant to help him secure the Commonwealth's principal witness in order to prosecute

the defendant. If the defendant can be convicted for not answering such a question, why could not a statute be enacted in effect requiring every person suspected of crime to furnish the police a list of all the witnesses whose testimony would convict him? We do not see how we can uphold the present conviction on the first complaint without overturning the construction of the Constitution given after careful consideration in *Emery's Case.* We are not ready to take that step."

In *Opinion of the Justices*, 300 Mass. 620, this question of self incrimination referred to in art. 12 was likewise fully and carefully considered. The question there was whether the failure of a defendant to testify in a criminal proceeding may be made the subject of comment at his trial. It was there stated at page 625 that the privilege against self incrimination was generally regarded as one of great value, "a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded or tyrannical prosecutions." It was further said on the same page, "This [proposed] procedure cuts down the positive protection given by the Constitution and renders it conditional and subject to limitations. That which was before certain, clear and indubitable has become contingent, clouded and ambiguous. Positive rights secured to individuals by the Constitution cannot be thus circumscribed and rendered doubtful."

It is needless to repeat that the privilege afforded by art. 12 "is one of the fundamental rights of a citizen" (*Ross* v. *Crane*, 291 Mass. 28, 32) which "it is important that courts should carefully guard." 300 Mass. at page 623.

It may be true that generally there is no constitutional requirement for secrecy for tax returns but this fact of itself does not mean that information gleaned from such returns may be used in criminal proceedings against the taxpayer (other than for violation of c. 62) in violation of art. 12.

No case in Massachusetts has been brought to my attention and I have found none which holds that the sanctity of this provision of the Bill of Rights may be attacked in the

manner proposed. It does not appear to me that any of the cases cited in the answer of the majority of the court permit this.

Even the experts are not in agreement for while Professor Wigmore seems to think there is no self incrimination in the circumstances here under consideration, Wigmore on Evidence (3d ed.) §§ 2259c, 2259d, Professor Morgan is equally emphatic that there is. 34 Minn. L. Rev. 1.

In *Shapiro* v. *United States*, 335 U. S. 1, in a five to four decision the court denied the application of the Fifth Amendment to the Constitution of the United States in circumstances similar to ours. I am impressed, however, with the forceful and better reasoning, it seems to me, of the dissenting opinions of Justice Frankfurter and Justice Jackson.

If the commissioner should require under the authority given him by c. 62, §§ 24 and 28, that a citizen inform him "where he was at all times, with whom he was, and what he was up to" (335 U. S. at page 71), as Justice Jackson put it, would it be thought constitutional that such information could be used against the citizen in subsequent criminal proceedings against him? Similarly what about information demanded and received by the commissioner as to the sources of income of a citizen? Suppose the commissioner asked specifically if such income was acquired as a result of blackmail, forgery, highway robbery, gaming or any crime, would it be constitutional to permit information thus received to be used in a criminal proceeding against one giving such information under compulsion of law? I think not.

The answer to the question should be "No."

EDWARD A. COUNIHAN, Jr.