DANIEL MURPHY *vs.* COMMONWEALTH.

Suffolk. March 4, 1968. — March 28, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Constitutional Law,* Self incrimination. *Witness,* Self incrimination.

In a proceeding upon writ of error to determine the validity of a conviction of the petitioner of criminal contempt for refusing, on the ground of his privilege against self incrimination under the Fifth Amendment of the Federal Constitution, to answer questions put to him before a grand jury investigating a murder, whether he was a witness to a "shooting," where the record gave no detailed account of the "setting" in which the questions had been asked or information respecting the victim or the petitioner, except that the petitioner had a probation record covering nearly twenty-three years and was currently serving a jail sentence for a crime other than contempt, and in the circumstances it was not "perfectly clear" that answers to the questions could not possibly have a tendency to incriminate him, it was held that the judgment must be reversed, even though it was apparent that the petitioner "intended not to answer any questions regardless of their import or direction."

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on August 30, 1967.

The case was reserved and reported by *Spalding,* J.

*Lawrence F. O'Donnell* (*John B. Greene* with him) for the petitioner.

*Willie J. Davis,* Assistant Attorney General (*John F. McAuliffe,* Assistant District Attorney, with him), for the Commonwealth.

WILKINS, C.J. The issues raised by this petition for writ of error, which has been reserved and reported by the single justice without decision, are the validity of the action of a judge of the Superior Court in finding the petitioner guilty of criminal contempt and committing him to jail for one year (following the term he was serving in the House of Correction) for failure to answer two questions when a witness before a grand jury, who were investigating a murder.

On June 27, 1967, the petitioner was before the grand jury as a witness, having been duly summoned. The two questions, asked by an assistant district attorney, were:

"Were you present in any building on the evening of April 25, 1966, or the morning of April 26, 1966, and a witness to a shooting in this building?"

"Were you present during the evening of April 25, 1966, or the morning of April 26, 1966, and a witness to a shooting of a man by the name of Anthony Veranis?"

The petitioner refused to answer on advice of counsel, invoking the Fifth Amendment of the Constitution of the United States and art. 12 of the Declaration of Rights of the Constitution of the Commonwealth on the ground that his answers might tend to incriminate him. He was then brought before a judge of the Superior Court, where the assistant district attorney stated that the petitioner had not been a suspect in the matter under investigation, either as to the events leading up to the crime, as to its perpetration, or any events following it, and was before the grand jury merely as a witness. The judge ordered the petitioner to return before the grand jury and to answer the questions. Again before the grand jury the petitioner repeated his refusal to answer on the advice of counsel in reliance on the same constitutional grounds.

On July 12, 1967, the petitioner was brought before the same judge on an order to show cause why he should not be adjudged in contempt. The petitioner was represented by counsel. The assistant district attorney stated that one William Geroway had been indicted by the grand jury,

who had completed their term of service. The district attorney also stated that the shooting and murder occurred near Dudley Street in the Roxbury District of Boston in the late evening of April 25, 1966, or the early morning of April 26; that following the shooting and further assaults on the victim his body was dumped in the Blue Hills section of Milton and was recovered on April 26.

The petitioner offered in evidence his probation record in the Superior Court which showed convictions unrelated to the matter under investigation. The record began with June 10, 1944, and ended with a conviction for larceny on March 4, 1967, and a sentence of six months to the House of Correction. The assistant district attorney stated that if the petitioner had replied before the grand jury that he had been present, he then would have been asked merely what he had seen and what he had heard.

We consider only the Federal constitutional question. Our conclusion must rest upon our opinion as to what is foreclosed under the decisions expressing the current view of the Supreme Court of the United States. Our conclusion cannot be governed by our personal views of the merits or by any fear on our part that the probable consequence could be an impairment of the effectiveness of the investigatory powers of the grand jury in the solution of crime.

The current view of the Supreme Court of the United States has origin in *Hoffman* v. *United States*, 341 U. S. 479, which reversed a conviction of contempt for refusal to answer questions before a Federal grand jury. It was stated in that case (p. 486) that the privilege extends to questions which would furnish a link in the chain of evidence needed to prosecute for crime. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself — his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . . and to require him to answer if 'it clearly appears to the court that he is mistaken.' . . . However, if the witness, upon interposing his claim, were required to prove the hazard in

the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result" (pp. 486–487).

The result in the case at bar is foreshadowed by our decision in *Commonwealth* v. *Baker,* 348 Mass. 60, 62–63, where we said, "We are mindful that the recent decision in *Malloy* v. *Hogan,* 378 U. S. 1, has held that the Fourteenth Amendment guarantees to a witness testifying in a State court the protection of the Fifth Amendment and that Federal standards will apply in determining whether a claim of privilege is justified. Under the Federal standard it must be ' "*perfectly clear,* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency" to incriminate.' *Malloy* v. *Hogan, supra,* at pages 11–12. . . . Whether a question calls for an incriminating answer must be determined in the setting in which it is asked."

The record gives no detailed account by either the petitioner or the Commonwealth of the "setting" in which the questions were asked. We are told nothing as to the personal background of the murdered man, any business of his, or any residence he may ever have had. Except that the petitioner had a probation record and was currently serving a sentence at the House of Correction at Deer Island we know nothing of him. This is unfortunate. In the circumstances we are unable to say that it clearly appears that his answers could not possibly lead to injurious disclosure. We are constrained to reach this result reluctantly and are in agreement with the statement of the judge in the Superior Court that the record is clear that "the witness intended not to answer any questions regardless of their import or direction."

We see no escape under G. L. c. 250, § 12, from awarding costs. The petitioner is entitled to costs, to be paid by the county of Suffolk. *Garabedian* v. *Commonwealth,* 336 Mass. 119, 126, and cases cited.

> *Judgment of sentence reversed.*
> *Petitioner awarded judgment for*
>   *costs against the Commonwealth,*
>   *to be paid by the county of*
>   *Suffolk.*