ATTORNEY GENERAL *vs.* FRANCIS X. COLLETON.

Suffolk.   October 4, 1982. — December 28, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law,* Self-incrimination.  *Witness,* Immunity.  *Consumer
Protection Act.  Attorney General.*

Comparison of the protections afforded by the privilege against self-in-
crimination as embodied, respectively, in the Fifth Amendment to the
United States Constitution and art. 12 of the Massachusetts Declara-
tion of Rights.  [793-796]

A witness summoned by the Attorney General to give testimony pursuant
to a civil investigative demand under G. L. c. 93A, § 6, who validly
claimed the privilege against self-incrimination secured him by art. 12
of the Massachusetts Declaration of Rights, could not be compelled to
testify unless he were granted immunity from criminal prosecution for
any offenses to which the compelled testimony related.  [796-799]

The immunity afforded by G. L. c. 93A, § 6 (7), respecting the use, in a
subsequent criminal prosecution, of testimony compelled by the Attor-
ney General pursuant to a civil investigative demand, was not suffi-
cient to displace a witness's valid claim of the privilege against self-
incrimination secured him by art. 12 of the Massachusetts Declaration
of Rights.  [799-801]


CIVIL ACTION commenced in the Superior Court Depart-
ment on March 3, 1981.

The case was heard by *Ronan,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Bernadette L. Sabra,* Assistant Attorney General (*Robert
Singer,* Assistant Attorney General, with her) for the plain-
tiff.

*J. Albert Johnson* for the defendant.

LIACOS, J.  The facts pertinent to this appeal are as fol-
lows.  On October 30, 1980, the Attorney General served

Civil Investigative Demand (C.I.D.) No. 80-36 on the defendant. G. L. c. 93A, § 6. The purpose of the demand was to investigate as possible unfair or deceptive acts, in violation of G. L. c. 93A, § 2, the failure of a yacht chartering company, Sea Quest, Inc., doing business as St. Tropez Virgin Island Charters, to return consumer security deposits after termination of vessel charters as provided in the charter agreement. The C.I.D. requested the production of relevant documents and required the presence of Colleton so that he could be examined under oath by a staff member of the Attorney General's office. The office of the Attorney General had requested Colleton's presence on the belief that he, as apparent president of the chartering company, was engaged in, or had information pertaining to, the alleged violations of G. L. c. 93A, § 2.

Colleton appeared in the office of the Attorney General on November 25, 1980, in compliance with the C.I.D. At that time the defendant stated that he did not have any of the requested documents. After answering other preliminary questions, Colleton refused to answer any questions pertaining to Sea Quest, Inc., or St. Tropez Virgin Island Charters. The basis of the defendant's refusal was his claim of protection against self-incrimination under the Federal and State Constitutions. Counsel for the defendant reiterated the defendant's willingness to give testimony if he were granted immunity under G. L. c. 233, § 20E. The assistant attorney general stated that the Attorney General could not, and would not, petition to the Supreme Judicial Court for a grant of immunity pursuant to G. L. c. 233, § 20E, since she believed such procedure to be applicable only to grand jury proceedings. The oral examination was suspended.

Thereafter, on March 3, 1981, the Attorney General petitioned the Superior Court for an order to compel Colleton to testify. G. L. c. 93A, § 7. The petition alleged that G. L. c. 93A, § 6 (7), granted immunity adequate to displace the constitutional privilege against self-incrimination.[1] A hear-

---

[1] The last sentence of G. L. c. 93A, § 6 (7), as appearing in St. 1969, c. 814, § 3, provides: "This section shall not be applicable to any crimi-

ing on the petition was held March 19, 1981. The Superior Court judge entered an order on April 3, 1981, denying the petition. The Attorney General appealed on May 19, 1981. We transferred the appeal to this court and now affirm.

The position of the Attorney General appears to be that (1) G. L. c. 93A, § 6 (7), should be liberally interpreted to provide immunity from the use and derivative use of evidence compelled under the statute, and (2) such immunity is constitutionally adequate to displace the privilege against self-incrimination found in the Fifth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution. Reliance is placed on Federal decisions, especially *Kastigar* v. *United States,* 406 U.S. 441 (1972), and the claim that recent decisions of this court, e.g., *Blaisdell* v. *Commonwealth,* 372 Mass. 753 (1977), have adopted the Federal standard as to the scope of immunity necessary to displace the privilege under Massachusetts law.[2] The Attorney General makes no argument that the defendant did not invoke properly the privilege against self-incrimination.

The defendant argues that (1) G. L. c. 93A, § 6 (7), does not grant derivative-use immunity as required by *Kastigar;* (2) even if it does, a higher standard, namely transactional immunity, is required under Massachusetts law; and (3) to

nal proceeding nor shall information obtained under the authority of this section be admissible in evidence in any criminal prosecution for substantially identical transactions."

[2] The Attorney General's principal brief fails to discuss the landmark decision in *Emery's Case,* 107 Mass. 172 (1871), as well as its progeny, such as *Cabot* v. *Corcoran,* 332 Mass. 44 (1954), on which the defendant relies. In his reply brief, the Attorney General refers to these earlier cases as relying on "antiquated standards" and relies on public employee cases such as *Baker* v. *Lawrence,* 379 Mass. 322 (1979), *Broderick* v. *Police Comm'r of Boston,* 368 Mass. 33, cert. denied, 423 U.S. 1048 (1976), *Silverio* v. *Municipal Court of the City of Boston,* 355 Mass. 623, cert. denied, 396 U.S. 878 (1969), as well as *Blaisdell* v. *Commonwealth,* 372 Mass. 753 (1977), to support his claim that use and derivative-use immunity are sufficient to displace the privilege granted by art. 12. We shall comment on these arguments in the text of the opinion.

find transactional immunity in § 6 (7) would require the court to "effectively re-write" the statute, an exercise in which we should not engage.

We consider the answers to the following questions as dispositive of this appeal: (1) Does Massachusetts law require no less than transactional immunity to displace the privilege against self-incrimination found in art. 12 of our Constitution?[3] To this question we answer, "Yes." (2) Does G. L. c. 93A, § 6 (7), provide such transactional immunity? The answer is, "No." Accordingly, we affirm the order of the Superior Court without the necessity that we discuss arguments as to possible use and derivative-use interpretations of the statute's grant of immunity. We turn to the discussion of the relevant questions.

1. The privilege against self-incrimination has been heralded as "an important advance in the development of our liberty — 'one of the great landmarks in man's struggle to make himself civilized.'" *Ullmann* v. *United States*, 350 U.S. 422, 426 (1956), quoting E.N. Griswold, The Fifth Amendment Today 7 (1955). See *Murphy* v. *Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52, 58-63 (1964); Note, Witness Immunity Statutes: The Constitutional and Functional Sufficiency of "Use Immunity," 51 B.U.L. Rev. 616, 617 (1971). "It reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates 'a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire

---

[3] Article 12 of the Declaration of Rights of the Massachusetts Constitution provides: "No subject shall be . . . compelled to accuse, or furnish evidence against himself."

load,' 8 [J.] Wigmore, Evidence (McNaughton rev., 1961), 317; our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life,' *United States* v. *Grunewald,* 233 F.2d 556, 581-582 [1956] (Frank, J., dissenting), rev'd, 353 U.S. 391 [1957]; our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes 'a shelter to the guilty,' is often 'a protection to the innocent.' *Quinn* v. *United States,* 349 U.S. 155, 162 [1955]." *Murphy* v. *Waterfront Comm'n of N.Y. Harbor, supra* at 55. The privilege is so fundamental that, although it only protects against disclosures that a witness believes could be used or lead to other evidence that could be used in a criminal prosecution (*Hoffman* v. *United States,* 341 U.S. 479, 486 [1951]), it can be invoked "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar* v. *United States, supra* at 444. See *Emery's Case,* 107 Mass. 172, 183 (1871). It is in this spirit of respectful observance of the constitutional protections of the individual that we analyze the issue presented by the Attorney General: What is the minimum extent of immunity required to supplant the constitutional privilege against self-incrimination?

The fundamental values of the privilege often run counter to the public's right to every man's evidence. Cf. *Piemonte* v. *United States,* 367 U.S. 556, 559 n.2 (1961). The concept of immunity has developed as the "rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify." *Kastigar, supra* at 446. It is through immunity statutes supplanting the privilege that Legislatures have attempted to ease such tensions. See The Supreme Court, 1971 Term, 86 Harv. L. Rev. 181, 183 (1972). The exchange is not a constitutionally sound bargain, however, if the statutory grant provides a lesser degree of protection than that which the witness enjoys by remaining silent in reliance upon the privilege. See *Murphy* v. *Waterfront Comm'n of N.Y. Harbor, supra* at 78; *Counselman* v. *Hitchcock,* 142 U.S. 547, 585 (1892).

Immunity only from the use of the compelled testimony and its fruits long had been held not to meet the Federal constitutional requirement of coextensiveness. See *Counselman* v. *Hitchcock, supra* at 564. Yet, in *Kastigar* v. *United States, supra,* the United States Supreme Court departed from *Counselman,* which had held that nothing less than absolute immunity from subsequent prosecution based upon any transaction, matter, or occurrence about which an immunized witness testified or produced evidence supplanted the Fifth Amendment prohibition against compelled testimony.[4] See *Counselman* v. *Hitchcock, supra* at 586. The *Kastigar* Court held that an immunity statute would satisfy constitutional requirements even though it proscribed only the use, in a criminal case, of compelled testimony and the use of any evidence directly or indirectly derived from that compelled testimony. *Kastigar, supra* at 453. See *Zicarelli* v. *New Jersey State Comm'n of Investigation,* 406 U.S. 472, 475-476 (1972).

Thus, it is clear that the minimum required by the Federal Constitution is the so called "use and derivative-use immunity." The phraseology of the Massachusetts Constitution, however, is different from that of the Fifth Amendment. The Fifth Amendment states, "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." Article 12 sets forth, "No subject shall be . . . compelled to accuse, or furnish evidence against himself." This court has expressly observed that, when interpreting the Massachusetts Constitution, we are not bound by Federal decisions which are less restrictive in some aspects than our Declaration of Rights. *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 651 (1981). In fact, on

---

[4] The absolute immunity from criminal prosecution described in *Counselman* v. *Hitchcock,* 142 U.S. 547 (1892), is commonly referred to as "transactional immunity." Transactional immunity has been described in *Kastigar* v. *United States,* 406 U.S. 441, 443 (1972), as that which "grant[s] immunity from prosecution for offenses to which compelled testimony relates." Use and derivative-use immunity are described as "granting immunity from the use of compelled testimony and evidence derived therefrom." *Id.*

occasion we have exercised our prerogative to interpret our Constitution more broadly.[5] The United States Supreme Court has recognized that "a State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards" (emphasis in original). *Oregon* v. *Hass,* 420 U.S. 714, 719 (1975). See *Ludwig* v. *Massachusetts,* 427 U.S. 618, 620-622 (1976); *Commonwealth* v. *Francis,* 374 Mass. 750, 758 (1978); Douglas, State Judicial Activism — The New Role for State Bills of Rights, 12 Suffolk U.L. Rev. 1123, 1145 (1978).

Long before *Kastigar,* and before *Counselman,* this court decided that the words of art. 12, "or furnish evidence against himself," may be presumed to be intended to add something to the significance of the preceding language, "[n]o subject shall be . . . compelled to accuse . . . himself." *Emery's Case, supra* at 182. We have consistently held that art. 12 requires a broader interpretation than that of the Fifth Amendment. *Commonwealth* v. *Hughes,* 380 Mass. 583, 595 (1980).[6]

---

[5] See *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 651 (1981) (Massachusetts Declaration of Rights affords greater degree of protection to woman's right to choose abortion than does Federal Constitution); *District Attorney for the Suffolk Dist.* v. *Watson,* 381 Mass. 648, 650 (1980) (death penalty contravenes Massachusetts Declaration of Rights even if permissible under Federal Constitution); *Commonwealth* v. *Soares,* 377 Mass. 461, 475-477, cert. denied, 444 U.S. 881 (1979) (use of peremptory challenges to eliminate black jurors deprived defendants of State constitutional right to fair trial by impartial jury; more strict than requirement of United States Constitution). Cf. *District Attorney for the Plymouth Dist.* v. *New England Tel. & Tel. Co.,* 379 Mass. 586, 597 (1980) (Liacos, J., dissenting) (art. 14 of the Declaration of Rights may provide protections beyond Federal Constitution in area of unreasonable search and seizures); *Commonwealth* v. *Ortiz,* 376 Mass. 349, 358 (1978) (State Constitution may afford greater protections than Federal Constitution, but not in circumstances of case).

[6] But see *Commonwealth* v. *Brennan,* 386 Mass. 772, 780 (1982). Although interpretation of art. 12 demands a broader immunity, it does not change the classification of evidence to which the privilege applies. Only that genre of evidence having a testimonial or communicative nature is protected under the privilege against self-incrimination. We have noted,

In *Emery,* this court held that immunity for a witness cannot be found "so long as [the witness] remains liable to prosecution criminally for any matters or causes in respect of which he shall be examined, or to which his testimony shall relate." The court required that a witness be offered transactional immunity to protect him as "fully and extensively as he would be secured by availing himself of the privilege accorded by the Constitution." *Emery's Case, supra* at 185.[7] The same view is expressed in more recent decisions. See, e.g., *Commonwealth* v. *Prince,* 313 Mass. 223, 231 (1943) (court declined to overturn "the construction of the Constitution given after careful consideration in *Emery's Case*"), aff'd on other grounds, 321 U.S. 158 (1944); *Cabot* v. *Corcoran,* 332 Mass. 44, 51 (1954). See also *Commonwealth* v. *Hughes, supra*; *Opinions of the Justices,* 328 Mass. 663, 671 (1952).[8]

---

however, that evidence which is "testimonial" or "communicative" is that which reveals the subjective knowledge or thought processes of the subject. *Id.* at 778. See *Commonwealth* v. *Hughes,* 380 Mass. 583, 591-592 (1980).

[7] It is significant to note that the court was faced with an immunity statute somewhat similar to G. L. c. 93A, § 6 (7). That statute provided, in part: "[B]ut the testimony of any witness examined before said committee upon the subject aforesaid or any statement made or paper produced by him upon such an examination, shall not be used as evidence against such witness in any civil or criminal proceeding in any court of justice." St. 1871, c. 91. *Emery's Case,* 107 Mass. 172, 185 (1871), held the statute "entirely ineffectual" to take the constitutional privilege under art. 12 from the witness. Compare the statute granting transactional immunity (St. 1953, c. 100), upheld as being within *Emery's Case* requirements. *Cabot* v. *Corcoran,* 332 Mass. 44 (1955).

[8] That transactional immunity is the long-established and still vital law of this Commonwealth is also established by a variety of legislative enactments. See, e.g., G. L. c. 54, § 120; G. L. c. 93, § 7; G. L. c. 150A, § 7 (3); G. L. c. 151A, § 43; G. L. c. 175, § 183; G. L. c. 176D, § 13; G. L. c. 233, § 20G. The language in these statutes indicates that where the Legislature intends to grant immunity it knows how to grant transactional immunity. Compare the language of G. L. c. 93A, § 6 (7), with, for example, the language in G. L. c. 150A, § 7 (3), inserted by St. 1938, c. 345, § 2: "No person shall be excused from . . . testifying . . . on the ground that the testimony . . . may tend to incriminate him . . . but no individual *shall be prosecuted or subjected to any penalty or forfeiture* for

The Attorney General claims that this court has recognized the sufficiency of use and derivative-use immunity to overcome a claim of testimonial privilege in *Baker* v. *Lawrence,* 379 Mass. 322 (1979), and *Silverio* v. *Municipal Court of the City of Boston,* 355 Mass. 623, cert. denied, 396 U.S. 878 (1969). The argument overlooks the difference between the issues in these public employment cases and the issues posed by compelling testimony under G. L. c. 93A, § 6 (7). The cited cases simply follow the holding of the United States Supreme Court that the Constitution does not bar, because of his reliance on the privilege against self-incrimination, the dismissal of a public employee who abuses his public trust. *Gardner* v. *Broderick,* 392 U.S. 273, 278 (1968). While self-incriminatory statements cannot be coerced by threats of dismissal (*Garrity* v. *New Jersey,* 385 U.S. 493, 500 [1967]), the focus of these cases is not the removal of the public employee's claim of privilege but rather the official's ability directly to perform governmental acts or the official's fitness or ability to serve generally in governmental service. Such is not the question here.

The opinion of the court in *Blaisdell* v. *Commonwealth,* 372 Mass. 753 (1977), gives no support to the Attorney General's position. In *Blaisdell* we cited *Kastigar, Emery's Case,* and *Counselman,* as well as *Commonwealth* v. *Prince, supra. Blaisdell, supra* at 762-763. The citation of *Kastigar* and other Federal cases is found in *Blaisdell* in support of the general proposition that the privilege cannot be displaced absent a constitutionally adequate grant of immunity. The issue raised here was not before the court in *Blaisdell,* but, to the extent its holding in *Blaisdell* is relevant, that holding is that the protections of G. L. c. 233, § 23B (barring the use "in evidence" of statements constituting confessions of guilt of the crime charged when such statements are obtained in compelled psychiatric examinations

---

or on account of *any* transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify . . ." (emphasis supplied).

under G. L. c. 123, § 15), were constitutionally inadequate by themselves to displace the privilege. The adequacy of G. L. c. 233, § 23B, to displace the protection of the privilege is the issue on which the court divided. See *Blaisdell* v. *Commonwealth, supra* at 770, 771 (Quirico and Braucher, JJ., dissenting). *Blaisdell* supports the position we take here.

2. We must determine next whether the immunity granted by G. L. c. 93A, § 6 (7), is sufficient to satisfy art. 12. General Laws c. 93A, § 6 (7), as appearing in St. 1969, c. 814, § 3, states in part: "This section shall not be applicable to any criminal proceeding nor shall information obtained under the authority of this section be admissible in evidence in any criminal prosecution for substantially identical transactions."

Assuming, arguendo, that the statute confers use and derivative-use immunity so as to survive a Federal challenge, the statute clearly is not adequate under the Massachusetts Constitution. The grant of immunity would only bar the use of the compelled testimony, directly or indirectly, in a narrow range of criminal prosecutions. The statute still leaves the witness open to potential criminal prosecution as a consequence of a disclosure he might be called upon to make. Such a result certainly does not put the witness in as secure a position as does reliance upon the privilege against self-incrimination. Failing the constitutional test, the statute contravenes the protections of art. 12.

We are aware of the often stated rule that a statute should not be construed so as to negate legislative intent. See *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 355 (1973). We are equally aware that the General Court designed G. L. c. 93A to bring business morality under the skillful scrutiny of an impartial tribunal and to codify new standards for commercial conduct. See Brown, Comment — 1980 N.Y.L.J., reprinted in M.G.L.A. c. 93A, at 74 (West Supp. 1982). General Laws c. 93A is a statute of broad import, and we have tried to uphold its purpose in other circumstances by granting the Attorney

General broad investigatory powers.  See *CUNA Mut. Ins. Soc'y* v. *Attorney Gen.*, 380 Mass. 539, 542 (1980); *Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.*, 372 Mass. 353, 365 (1977).  Cf. *Matter of a Civil Investigative Demand Addressed to Bob Brest Buick, Inc.*, 5 Mass. App. Ct. 717, 719-720 (1977).  Nevertheless, demands which invade any constitutional rights of the investigated party cannot be condoned.  *Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.*, *supra* at 361 n.8.  See *Finance Comm'n of Boston* v. *McGrath*, 343 Mass. 754, 761 (1962).

We are aware, also, of our duty to construe a statute in a way to avoid constitutional problems.  See *Beeler* v. *Downey*, *ante* 609, 613-614 (1982).  We see, however, no way to construe G. L. c. 93A, § 6 (7), to provide a grant of transactional immunity.[9]  The statutory language is clearly cast in terms of admissibility in evidence of information obtained.  In light of the well-established distinction between the "use" of evidence obtained and the bar to criminal prosecution transactional immunity imports,[10] we decline to rewrite the statute.

The difference between the language of art. 12 and that of the Fifth Amendment must be regarded as significant. To assume that, because of the common source of the principles articulated in each Constitution, the two provisions must have the same meaning would overturn the interpretation of the Massachusetts Constitution given with clarity and careful consideration in *Emery's Case*, 107 Mass. 172 (1871).  We have indicated before that we are not ready to take that step.  *Opinions of the Justices*, 328 Mass. 663, 672 (1952).  Positive safeguards secured to individuals by the Massachusetts Constitution, yet not available under the cognate provisions of the United States Constitution, should not be thus circumscribed.  We agree that the statutory grant

---

[9] Nor does the Attorney General urge such a reading on us.

[10] A distinction of which the Legislature is well aware.  See note 8, *supra*.

of immunity under G. L. c. 93A, § 6 (7), is not coextensive with the State privilege against self-incrimination. Only a grant of transactional immunity will supplant the protection of the individual under art. 12.[11]

The order denying the petition to enforce the civil investigative demand is affirmed.

*So ordered.*

---

[11] We emphasize that we make no implied holding that G. L. c. 93A, § 6 (7), is invalid or unconstitutional. Our holding is only that, as cast, it does not supplant the protection granted by art. 12.