Botsford, J.
INTRODUCTION
The Massachusetts Parole Board (the board) brings this action in the nature of certiorari under G.L.c. 249, §4 for judicial review of a decision of the Civil Service Commission (the commission). In its decision the commission ordered the reinstatement of Philip Maurice to his position as a parole officer after his discharge by the board. The board argues that the commission erred as a matter of law in reversing the board’s decision to discharge Maurice, and that this error substantially impairs the board’s rights. For the reasons discussed below, the commission’s decision is reversed.
BACKGROUND
Prior Proceedings
On November 21, 1988 the board made a determination to discharge Maurice from his position as a parole officer. Maurice appealed to the commission pursuant to G.L.c. 31, §§41-43 requesting reversal of his discharge. A hearing on the complaint was held before an administrative magistrate on September 10, 1989. The magistrate issued her recommended decision in favor of Maurice on February 14, 1990. By a decision dated July 26,1990, the commission adopted the findings of the magistrate and ordered Maurice reinstated. The board filed a timely motion for reconsideration with the commission pursuant to §4.3(n) of the Civil Service Rules of Practice and Procedure. On January 18, 1991, by a vote of two in favor, two against, the commission denied the board’s motion for reconsideration. The board then filed this action to obtain review of the commission’s decision.
Factual Background
The relevant facts, as appearing in the administrative record, are these. On or about November 2, 1988, the chairman of the board was informed that a female probationer named Paula Vincent[1] had alleged at a probation revocation hearing that Maurice had secured permission for her absence from the residential counseling program she.had been ordered to attend, and that on one occasion Maurice had driven her to a secluded area and assaulted her. The chairman was also informed that Maurice had allegedly misrepresented certain facts to a probation officer about his conduct relating to Vincent’s residential program.
On November 3, 1988, the chairman of the board sent Maurice the following letter:
I recently became aware that on or about October 31, 1988, you were scheduled to appear as a witness on behalf of Paula Vincent, a probationer, in the matter of her probation surrender hearing at Cambridge District Court.
*162 As your precise involvement in this matter is unclear, I require your presence, participation, and cooperation in an interview to be conducted at the Parole Board’s Central Office at 27-43 Wormwood Street, Boston, Massachusetts, on November 4, 1988 at 10 a.m.
The interview will be solely administrative in nature. Its purpose is to discover facts and to offer you an opportunity to explain events relating to the performance of duty. The interview will not seek a final determination or adjudication as to whether you ought to be removed from your job, but rather will be investigative in nature.
Additionally, please be advised that you have all the rights and privileges guaranteed by the laws of the Commonwealth of Massachusetts and the Constitution of this State and of the United States, including the right to be represented by counsel, at this inquiry.
I further advise you that the answers you may give to the questions propounded to you at this interview, or any information or evidence which is gained by reason of your answers, may not be used against you in a criminal proceeding except that you may be subject to criminal prosecution for any false answer that you may give under any applicable law of either the Commonwealth or the United States of America.
You have the right to remain silent, although you may be subject to disciplinary action by the Parole Board in the form of a discharge for the failure to answer material and relevant questions relating to the performance of your duties as an employee of the Commonwealth of Massachusetts.
No rescheduling of the interview will be effective unless approved by me. (Administrative Record [R.] 18-19; emphasis in original.)
Maurice did not appear on November 4, 1988 for the interview referred to in this letter. On that date, however, Maurice’s attorney, Anthony Traini, delivered a letter to the board’s chairman indicating that Maurice did not appear at the interview at counsel’s direction. In his letter, the attorney challenged the authority of the board — either statutory or administrative — to conduct an “investigatory interview” and objected to the timeliness of the notification to be present for the interview. The attorney’s letter also questioned the board’s authority to provide any grant of qualified use immunity in these circumstances,[2] and the board’s authority to take disciplinary action against Maurice for his failure to answer the board’s questions. In closing, the letter stated that no rescheduling of the interview would be necessary because the interview would not take place.
On November 9, 1988, Maurice received notice that a discharge hearing would be held relative to his failure to appear for the scheduled November 4 investigatory interview. Maurice and his attorney attended the discharge hearing on November 17, 1988. On November 21, 1988, Maurice received a letter of notification from the board that he was being discharged from his employment. In the letter, the board’s chairman stated that:
By your failure to appear and cooperate in the investigatory interview of November4,1988, you disobeyed my direct order. You thus engaged in inappropriate, unsatisfactory and insubordinate conduct which I deem just cause for your discharge from employment with the Massachusetts Parole Board. (Rill.)
On or about May 25, 1989, the board’s legal counsel contacted the Middlesex County District Attorney’s office and the Massachusetts Attorney General’s Office and confirmed that neither of these offices had at any time initiated any investigation into the matters concerning Maurice that were mentioned by the board’s chairman in his letter of November 3, 1988. However, Maurice was the subject of a separate investigation by the Middlesex County District Attorney into an allegation of rape which was unrelated to Vincent’s allegations.
Maurice appealed the board’s dismissal to the commission, and a hearing was held before an administrative magistrate on September 10, 1989. The administrative magistrate recommended in her decision of February 14, 1990 that Maurice be reinstated, reasoning that Maurice had a constitutional right to remain silent in light of the accusatory nature of the board’s scheduled investigatory interview. The magistrate also ruled that in view of the Supreme Judicial Court’s then recent decision in Carney v. Springfield, 403 Mass. 604 (1988), decided December 19, 1988, the use immunity offered by the board to Maurice was not sufficient to supplant Maurice’s privilege against self-incrimination under art. 12 of the Massachusetts Declaration of Rights. The magistrate expressed the view that there was no substantive difference between a situation, such as that presented by the Carney case, in which a public employee appears for an interview and refuses on grounds of constitutional privilege to answer specific questions that are posed by the employer; and a situation, such as that of Maurice, where the employee refuses to attend the interview at all on the basis of privilege. (R. 95-96.)[3] Finally, the magistrate concluded that Maurice’s failure to appear was not meant as defiance or to undermine the authority of the board’s chairman, but rather was a good faith attempt to assert his constitutional rights. (R. 96.)
DISCUSSION
In an action in the nature of certiorari under G.L.c. 249, §4, the reviewing court will correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff, or the real interest of the general public. Carney v. Springfield 403 Mass. 604, 605 (1988) (Carney), citing Murray v. Second District Court of Eastern Middlesex, 389 Mass. 508, 511 (1983). The issue presented here is thus whether the commission's decision reinstating Maurice demonstrated error of law which adversely affected a material right of the board or the interest of the public.
The board argues that the commission erred on two principal grounds: (1) in determining, in purported *163 reliance on the Carney trilogy,[4] that Maurice had a right, by reason of his privilege against self-incrimination, not only to refuse to answer specific questions the board might put to him at the investigatory interview, but also to refuse to appear for the interview itself;[5] and (2) in determining that Maurice was entitled to a grant of transactional immunity before being compelled to appear and to answer questions, even though no criminal investigation was pending or even contemplated. I agree with the first argument and therefore, do not need to reach the second.[6]
Although art. 12 has been interpreted broadly, the classification of evidence to which the privilege extends includes only evidence of a testimonial or communicative nature. Attorney General v. Colleton, 387 Mass. 790, 796-97 n. 6 (1982). Evidence which is testimonial or communicative in nature is that which reveals the subjective knowledge or thought processes of the subject. Id. A public employee’s appearance at a scheduled interview, in and of itself, does not implicate the privilege. Moreover, it bears emphasis that the privilege against self-incrimination applies only to answers which might tend to incriminate; if questions are not of an incriminating nature they must be answered. Gambale v. Commonwealth, 355 Mass. 394, 396 (1969); Commonwealth v. Baker, 348 Mass. 60, 62 (1964). See Attorney General v. Colleton, supra, 387 Mass. at 794 (the privilege “. . . protects against disclosures that a witness believes could be used or lead to other evidence that could be used in a criminal prosecution ...”). “The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself — -his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified . . .” Murphy v. Commonwealth, 354 Mass. 81, 83 (1968), quoting Hoffman v. United States, 341 U.S. 479, 486 (1951).
In accordance with these principles, Maurice’s ability to exercise a claim of privilege in connection with the board’s intended investigatory interview depended on the specific questions that would be asked of him. See Carney, 403 Mass, at 606 (police officer complied with order to report for questioning, was provided with detailed questions that would be asked of him, and validly refused to answer those questions on grounds of privilege); Springfield v. Civil Service Comm’n, supra, 403 Mass. at 613-14 and n. 2, and Doe v. Springfield, supra, 403 Mass. at 1010 (police officer ordered to submit to polygraph examination and answer questions about alleged drug activities; officer appeared for questioning but refused to answer the questions posed on grounds of privilege).[7] The privilege does not afford a public employee such as Maurice or indeed any person the right unilaterally to refuse to appear for questioning, in effect a bar or prohibition of inquiry, because, as the board points out, there is then no basis on which to decide whether the employee's exercise of privilege was legitimate. See Commonwealth v. Baker, supra 348 Mass. at 62 (ruling by judge that witness was excused afforded the witness broader protection than he was entitled to, where witness claimed privilege immediately after answering questions with respect to his name and address; the privilege is “merely an option of refusal, not a prohibition of inquiry”) (quotation omitted). Cf. Commonwealth v. LaBonte, 25 Mass.App.Ct. 190, 197 (1987) (prosecution witness’s claim of privilege sustained where defendant’s objection to the claim was in blanket form, and defendant made no attempt to mark out areas about which witness might testify without fear of self-incrimination).
Contrary to the determination of the administrative magistrate and the commission, the distinction between Maurice's refusal to submit to questioning at all and the refusal to answer specific questions posed is a real one in this case. While it might well be true that Maurice could legitimately invoke his Fifth Amendment and art. 12 privilege in connection with questions about Vincent’s allegations of assault, it is not self-evident that the board would necessarily question him about those allegations; the chairman’s letter of November 3, 1988 to Maurice gave no clear indication on the point, mentioning only that the area of inquiry the board would pursue related to Maurice’s “precise involvement” in the matter of Vincent’s probation surrender hearing. (R. 18.)
Furthermore, whatever might be the case about the allegations of assault, it does appear possible that questions narrowly framed and limited to the alleged securing of permission for Vincent to absent herself from a mandatory counseling program might not call for any testimony that could be used in a criminal proceeding against him.[8] If this were the case, of course, Maurice could not have validly refused to answer such questions. See Commonwealth v. Baker, supra 348 Mass. at 62 (“[t]he privilege does not preclude interrogation . . . [I]t can not be assumed that every question that would be asked would tend to incriminate. The danger of incrimination must be real and not imaginary”). In sum, Maurice did not have the prerogative unilaterally to refuse to appear and assert his privilege against self-incrimination in blanket fashion. Murphy v. Commonwealth, supra 354 Mass. at 83.
The material rights of the board were substantially impaired by the commission’s ruling. The board is charged with administering an agency within the criminal justice system that has significant and sensitive duties to perform. It has the right to compel its officers to answer questions “narrowly drawn and specifically related to their job performance” under threat of discharge “where the answers cannot be used against them in a criminal proceeding.” Carney, supra 403 Mass. at 609, citing Broderick v. Police Cornm'r of Boston, 368 Mass. 33, 38 (1975), cert. denied 423 U.S. 1048 (1976).
Carney indicates that transactional immunity must be offered to a public employee to supplant a valid claim of privilege. Nevertheless, under the commission’s decision, the board’s officers can refuse *164 even to appear for questioning about their official conduct by asserting constitutional privilege without being required to consider the specific questions that the board seeks to ask, or to permit the validity of the claim of privilege to be evaluated. In these circumstances, the board’s ability to exert discipline and properly supervise the conduct of its officers, which may be restricted by Carney, would be even more limited.[9] Accordingly, reversal of the commission’s decision is called for.
The last point to consider is whether, given the conclusion that the commission erred, the commission should be ordered simply to affirm or reinstate the board’s decision to discharge Maurice. It may be argued that such a result would follow quite naturally from this decision. However, the administrative magistrate found, apparently as a fact, that Maurice refused to appear at the investigatory interview not as an act of defiance but in good faith reliance on his attorney’s advice that he had a constitutional privilege to do so. (R. 96.) Compare Silverio v. Municipal Court of the City of Boston, 355 Mass. 623, 631, cert. denied, 396 U.S. 878 (1969) (noting the absence of a finding below that the public employee had relied in good faith on legal advice that he was under an obligation not to answer).
In light of the magistrate’s finding, the appropriate resolution of this case is to remand it to the commission for further consideration of the question whether Maurice’s discharge was proper in light of this decision.
ORDER
For the foregoing reasons, the decision of the commission is REVERSED, and the case is remanded to the commission for further consideration in light of this memorandum of decision.

 The probationer had been placed on probation by a judge in the Cambridge District Court.

 On the question of immunity, Mr. Traini wrote: “... I find a great deal of difficulty in accepting what appear to be your representations of quailified [sic] use immunity. I have argued before on behalf of Mr. Maurice that you have no authority to grant such qualified immunity, and the statutes of the Commonwealth do not confer that power upon you. Furthermore, I disagree with the line of cases often cited for the proposition that qualified immunity attaches with the occurrence of the testimony because of the fact that those cases have been limited to the situations in Massachusetts involving police officers, and there is no case in Massachusetts extending that automiatic [sic] use immunity to other public employees.” (R. 15.)

 The administrative magistrate stated in her decision:
Although [the board] argues that the current case can be distinguished from the Carney case in that in the Carney case, the officer did in fact appear for the interview, nonetheless, I conclude that this distinction is not controlling and is at best de minimus [sic]. As soon as he was notified of the interview, [Maurice’s] counsel . . . notified the [board] that [Maurice) would not appear or participate without being afforded transactional immunity.
(R 95-96.) As discussed in the text below, I conclude that the magistrate’s determination of de minimis distinction is legally erroneous. It is worth noting here, however, that the magistrate appears to have misread the letter sent by Maurice’s attorney, Mr. Traini, to the board’s chairman: As the portion of the letter previously quoted indicates (see p. 4, n. 2 above), there was no reference there to transactional immunity.

 Carney v. Springfield, 403 Mass. 604 (1988); Springfield v. Civil Service Comm'n, 403 Mass. 612 (1988); Doe v. Springfield, 403 Mass. 1010 (1988). The three cases were decided one month after the board discharged Maurice.

 The two commissioners who concluded that reconsideration should have been granted also reasoned that the commission had erred in concluding Maurice had a right not to attend the investigatory interview. (R 150-51.)

 I note however, that the second argument seems to run contrary to principles set forth in Carney, 403 Mass. at 608-11; Springfield v. Civil Service Comm’n, supra, 403 Mass. at 615; Doe v. Springfield, supra, 403 Mass. at 1010; Commonwealth v. Kerr, 409 Mass. 11, 14-15 (1990); and Attorney General v. Colleton, 387 Mass. 790, 794, 799 (1982). These cases suggest in fairly broad language that the privilege against self-incrimination may be invoked in any proceeding, civil or criminal, administrative or investigatory, and they do not appear to confine the necessity for transactional immunity in the public employment context to cases where a criminal investigation is proceeding on a parallel track with an internal disciplinary investigation. I make this observation, but do recognize that the policy considerations the board raises in relation to the decision in Carney are serious ones.

 The court’s decision in Springfield v. Civil Service Comm’n, supra, does not explicitly state that the officer in question was asked specific questions to which he invoked his privilege, but that case and Doe v. Springfield, supra, involved the same officer and the same factual circumstances (see Springfield v. Civil Service Comm’n. 403 Mass. at 613 n. 2), and the Doe case does make clear that specific questions were asked. See Doe v. Springfield, 403 Mass. at 1010.

 While as a parole officer, Maurice would not seem to have any official responsibility or function to perform in connection with a probationer, and his alleged involvement in Vincent’s case might have been improper, it is not clear that such conduct would have or might have criminal consequences. No party has suggested any crime that Maurice might be accused of having committed by virtue of this alleged conduct. Maurice argues that the incident might somehow become connected to the alleged assault on Vincent as evidence of consciousness of guilt, but on the scant record presented this is a difficult proposition to assess.

 Another ground for reversal of the commission’s decision which was raised by the dissenting commissioners (although not by the board in this case) is that the commission erred in ruling Maurice could refuse to appear to answer questions without a grant of transactional immunity when in fact Maurice never sought transactional immunity. (R. 150-51.) The dissenters read Carney to indicate that an employee must first affirmatively invoke the right to transactional immunity under art. 12 before he mayvalidly refuse to answer questions on the grounds that he was not granted such immunity. There is some force to the point, but now that Carney has been decided, it does appear that if Maurice had attended the scheduled investigatory interview and if he had asserted a valid claim of privilege in response to questions posed by the board, a refusal on his part to answer those questions in the absence of an offer of transactional immunity would probably be upheld even if he did not specify the type of immunity he was seeking. Cf. Silverio v. Municipal Court of the City of Boston, 355 Mass. 623, 628, cert. denied 396 U.S. 878 (1969) (court assumed that privilege could now be asserted even though it was not expressed when questions were put). I agree with the Commissioners, however, that Maurice never asked for transactional immunity, directly or indirectly, before he was discharged.