## In the Matter of a John Doe Grand Jury Investigation.

Middlesex. April 5, 1989. — June 12, 1989.

Present: Wilkins, Liacos, Abrams, & O'Connor, JJ.

*Grand Jury. Witness,* Immunity. *Practice, Criminal,* Grand jury proceedings. *Constitutional Law,* Grand jury, Self-incrimination. *Contempt. Jurisdiction,* Superior Court.

Where a prospective witness, purportedly having received a grant of immunity from a single justice of this court pursuant to G. L. c. 233, § 20E, thereafter refused to testify before a grand jury, a contempt proceeding was properly commenced in the Superior Court in the county in which the grand jury sat. [127-128]

Rule 65.3 of the Massachusetts Rules of Civil Procedure had no application to a contempt proceeding against a prospective grand jury witness arising out of the witness's violation of an immunity order issued by a single justice of this court pursuant to G. L. c. 233, § 20E. [128]

The immunity granted by a single justice of this court pursuant to G. L. c. 233, § 20E, by which a witness is ordered to testify before a grand jury concerning the grand jury's investigation of a crime or crimes listed in c. 233, § 20D, is immunity from prosecution for not only those crimes listed in § 20D but also for any other crime related to a transaction about which the witness is compelled to testify (so-called transactional immunity). [128-130]

APPLICATION for a grant of immunity filed in the Supreme Judicial Court for the county of Suffolk on October 20, 1988.

The case was heard by *Nolan,* J.

After contempt proceedings were initiated in the Superior Court Department, questions of law were reported to the Appeals Court by *Hiller B. Zobel,* J. The Supreme Judicial Court granted a request for direct review.

*Tobin N. Harvey,* Assistant Attorney General, for the Commonwealth.

*Stephen R. Delinsky (Evan Slavitt* with him) for the witness.

WILKINS, J.   We deal with questions reported by a Superior Court judge arising out of the refusal of a witness, purportedly immunized by a single justice of this court, to testify before a Middlesex County grand jury. See G. L. c. 233, §§ 20C-20H (1986 ed.).

The questions come to us on a statement of agreed facts which we summarize. The witness, who was summoned before a grand jury that was investigating alleged violations of the conflict of interest and extortion statutes, validly claimed his privilege against self-incrimination. On application of the Attorney General, a single justice of this court issued an order granting immunity to the witness.[1] The witness appeared with counsel before the grand jury, answered certain questions but declined to answer others, asserting his privilege against self-incrimination expressed in the Fifth Amendment to the United States Constitution and in art. 12 of the Massachusetts Declaration of Rights.

The Attorney General then initiated contempt proceedings in the Superior Court. The witness challenged the jurisdiction of the court, claiming that such a contempt proceeding could only be brought before a single justice of the Supreme Judicial Court. The first reported question concerns this issue. The witness also argued that, in commencing the contempt proceeding, the Attorney General should have followed the complaint procedure prescribed by Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982), but that he had not done so. The second reported question concerns this issue. The witness argued further that, in any event, the immunity he was granted did not protect him from self-incrimination if he were to answer

---

[1] The significant portion of the order reads as follows:

"That the witness, . . ., give testimony before the Middlesex County Grand Jury regarding the investigation of alleged violations of the conflict of interest and the extortion statutes by various Middlesex County Deputy Sheriffs and the Middlesex County Sheriff. It is further ordered that upon so testifying, the witness, . . ., shall have personal immunity and shall not be prosecuted or subjected to a penalty or forfeiture with respect to the transactions, matters and things about which he is compelled to testify, except for perjury committed while giving testimony, or otherwise failing to comply with this order."

the questions that he declined to answer before the grand jury. The Superior Court judge accepted the witness's argument that the immunity set forth in G. L. c. 233, § 20G, was not as broad as it should be in order to protect the witness's State constitutional rights. The judge concluded that the grant of immunity did not include immunity from prosecution for a crime not listed in G. L. c. 233, § 20D. The third issue we discuss involves the scope of the immunity granted to the witness.

We allowed the parties' joint application for direct appellate review. We conclude that the question of the witness's contempt of court was properly before the Superior Court judge and that the immunity granted to the witness fully protected his constitutional rights against self-incrimination.

1. The first reported question asks whether the Superior Court judge was correct in rejecting the witness's claim that the contempt proceeding should have been brought in the Supreme Judicial Court for the county of Suffolk.[2] We answer in the affirmative.

Section 20H of G. L. c. 233 provides that if a witness, immunized by a Justice of this court, thereafter refuses to testify, contempt proceedings should be brought "in the court where the alleged contempt occurred." The statute says that the proceeding should be brought where the alleged contempt was committed; it does not say that the proceeding should be brought in the court whose order the witness allegedly failed to carry out. An immunized witness's refusal to testify before a grand jury sitting in a county of this State is more nearly a contempt committed in the Superior Court of that county than it is a contempt committed in the single justice session of this court. See Mass. R. Crim. P. 5 (a) and (h), 378 Mass. 850 (1979).

---

[2] The full question is:

"Was the Court correct in denying the motion of the witness to dismiss for lack of subject matter jurisdiction which motion asserted that the Supreme Judicial Court is the exclusive forum for the institution of contempt proceedings for violation of an immunity order issued by a Single Justice of the Supreme Judicial Court pursuant to M.G.L. c. 233, § 20E?"

The statute is admittedly ambiguous on this point. We elect an interpretation that produces the more practical result, leaving the administration of an immunity order to a judge in the county where the grand jury is sitting. We recently said that "a contempt proceeding *initiated in the Superior Court* pursuant to § 20H will normally be the proper procedure to follow when an immunized witness refuses to testify" (emphasis supplied). *Commonwealth* v. *Steinberg,* 404 Mass. 602, 608 (1989). See *Ward* v. *Coletti,* 383 Mass. 99, 109 (1981).

2. The judge was correct in declining to dismiss the contempt proceeding in response to the witness's claim that the Commonwealth should have filed a complaint pursuant to Mass. R. Civ. P. 65.3. We, therefore, answer the second question in the affirmative.[3] As the language just quoted from our opinion in *Commonwealth* v. *Steinberg* indicates, a contempt arising out of the violation of a § 20E immunity order is governed by § 20H. The immunity order issued by the single justice of this court was not a court order to which rule 65.3 applies. See rule 65.3 (a). Rule 65.3 (b) contemplates that there would be a "civil action out of which the contempt arose." There is no underlying civil action in the rule 65.3 sense involved in this case.

3. The third issue concerns the scope of the immunity granted by an order of the single justice.[4] The question is whether the judge below was "correct in deciding that the scope of immunity granted to the witness pursuant to [§ 20G] is limited only to transactional immunity for crimes enumerated in the order of immunity."

---

[3] The second question is:

"Was the Court correct in denying the motion of the witness to dismiss for lack of subject matter jurisdiction which motion was based on the failure of the Commonwealth to file a complaint pursuant to Mass. R. Civ. P. 65.3 ?"

[4] The "question" reported consists of three questions. One question concerns a position that the Commonwealth took at the outset of this case on the scope of such an immunity order but has now abandoned. We need answer neither that question nor whether the scope of immunity that the Commonwealth previously claimed was granted by G. L. c. 233, § 20G, would satisfy art. 12 of the Massachusetts Declaration of Rights.

When a single justice orders a witness to testify before a grand jury concerning the grand jury's investigation of a crime or crimes listed in § 20D, the immunity granted is transactional immunity, immunity from prosecution for offenses to which the compelled testimony relates. See *Kastigar* v. *United States,* 406 U.S. 441, 443 (1972). The crimes as to which a witness is thus immunized are not only those crimes listed in § 20D but also any crime related to a transaction about which the witness is compelled to testify. Cf. *In re Vericker,* 446 F.2d 244, 247 (2d Cir. 1971) (immunity extends to testimony concerning offenses not themselves grounds for grant of immunity). We have characterized § 20G immunity as a grant of transactional immunity. See *Attorney Gen.* v. *Colleton,* 387 Mass. 790, 797 n.8 (1982). Any contrary construction of G. L. c. 233, § 20G, and related sections, would make the immunity statute ineffective, because the immunity granted would not be coextensive with the witness's art. 12 right against self-incrimination. See *Attorney Gen.* v. *Colleton, supra* at 799, 801; *Emery's Case,* 107 Mass. 172, 181-182 (1871).

An immunized witness may not be prosecuted if his compelled testimony implicates him in any crime regardless of whether that crime is referred to in § 20D or in the order granting immunity. Thus, it makes no difference that crimes such as compounding a felony (G. L. c. 268, § 3 [1986 ed.]), and tax fraud (G. L. c. 59, § 91 [1986 ed.]), are not listed in § 20D or that testimony sought from a witness might furnish a link in the chain of evidence needed to prosecute a witness for such a non-§ 20D crime (see *Taylor* v. *Commonwealth,* 369 Mass. 183, 187-188 [1975]). The witness's immunity is complete as to any compelled testimony without regard to whether an arguably relevant crime is listed in § 20D.

The answer we give is not one that careful counsel could have anticipated with full confidence. The Attorney General came to the same conclusion only at the time he filed his reply brief in this court. Moreover, opinions of this court could be read as creating some doubt about the scope of the immunity that a single justice of this court is authorized to grant. There is a statement in *Grand Jurors for Middlesex County for the*

*Year 1974* v. *Wallace,* 369 Mass. 876, 880 (1976), that "as to crimes not specified [in § 20D], no immunity shall be granted," but that statement concerned only the absence of a right to make any grant of immunity in investigations of non-§ 20D crimes. Likewise, discussion of the limitation on the examination of an immunized witness in *Commonwealth* v. *Donahue,* 369 Mass. 943, 950-951, cert. denied, 429 U.S. 833 (1976), could be read as suggesting that an immunized witness might somehow incriminate himself in his trial testimony. The court was not saying, nor was the defendant arguing, however, that the witness's immunity extended only to § 20D crimes. See *Smith* v. *Commonwealth,* 386 Mass. 345, 348 (1982), where the court did not reach the argument that an immunized witness, allegedly a minor, was not adequately immunized because delinquency charges are not mentioned in § 20D.

Whatever doubts there may have been about the scope of § 20G immunity are not resolved. The transactional immunity granted by § 20G is stated in language substantially similar to that considered in *Cabot* v. *Corcoran,* 332 Mass. 44, 46 (1954), which this court said "was designed to grant an immunity as broad in all respects as the [art. 12] privilege, and it should be so construed." *Id.* at 52. We also said that "[i]t would be difficult to imagine an immunity more complete." *Id.* at 51. We do not see in the expression of use immunity in § 20G (in addition to transactional immunity) any narrowing of the broad scope of the language interpreted in the *Cabot* case and set forth in much the same words in § 20G.

4. We answer questions one and two, "yes." Our discussion of the issues of continuing importance under question three adequately advises the witness and the judge concerning the scope of the witness's immunity.