NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12869


IN THE MATTER OF A GRAND JURY INVESTIGATION.



Suffolk.     April 7, 2020. - September 8, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Grand Jury.  District Attorney.  Police Officer.  Evidence,
    Grand jury proceedings, Testimony before grand jury,
    Immunized witness, Exculpatory, Disclosure of evidence,
    Impeachment of credibility.  Practice, Criminal, Grand jury
    proceedings, Immunity from prosecution, Disclosure of
    evidence.  Witness, Immunity, Impeachment, Police officer.




    Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on October 2, 2019.

    The case was reported by Cypher, J.


    William T. Harrington (Edward P. Harrington also present)
for the petitioners.
    Shoshana E. Stern, Assistant District Attorney, for the
Commonwealth.
    Scott P. Lewis, Samuel B. Dinning, Matthew R. Segal,
Jessica J. Lewis, & Daniel L. McFadden, for American Civil
Liberties Union of Massachusetts, Inc., & another, amici curiae,
submitted a brief.

GANTS, C.J.  In 2019, the district attorney learned through immunized grand jury testimony that two police officers, the petitioners in this case, knowingly made false statements in their police reports that concealed the unlawful use of force by a fellow officer against an arrestee and supported a bogus criminal charge of resisting arrest against the arrestee.  The district attorney, to his credit, prepared a discovery letter describing the petitioners' misconduct and asked a Superior Court judge to authorize its disclosure to defense counsel as potentially exculpatory information in unrelated criminal cases where the petitioners might be witnesses.  The judge authorized the disclosure.  The petitioners appealed, claiming that the information should not be disclosed to defense counsel in unrelated cases because disclosure is not constitutionally required and would reveal information obtained from immunized testimony before a grand jury.  We affirm the judge's order of disclosure.[1]

Background.  We recite the facts of this case based upon the information contained in the G. L. c. 211, § 3, petition and the parties' agreed upon statement of facts.  The petitioners are Fall River police officers who were present when fellow

---

[1] We acknowledge the amicus brief submitted by the American Civil Liberties Union of Massachusetts, Inc., and the Massachusetts Association of Criminal Defense Lawyers, Inc.

police officer, Michael Pessoa, used force while arresting an individual (arrestee) on February 12, 2019.  Pessoa submitted an arrest report concerning the arrest; the petitioners did not.  A few hours after the arrest, the petitioners were ordered by their superiors to each complete the police department's Use of Defensive Tactics Report (use-of-force report) because the arrestee was observed to have a bloody lip while being booked at the police station.  The petitioners are not themselves alleged to have used force during this incident.

The use-of-force report is a preprinted two-page form that a police officer must complete after using force on a suspect or arrestee.  The kinds of use-of-force range from the use of a firearm or pepper spray, to the use of certain hands-on force, such as an "arm bar take down".  A use-of-force report is not an incident report or an arrest report; rather, it is an internal police department report generated to memorialize an officer's use of force during an encounter with an individual.  Each of the petitioners executed a use-of-force report that, in essence, adopted Pessoa's version of events as set forth in his incident report -- namely, that the arrestee was noncompliant, threatened to punch the officers, and was then taken to the ground by Pessoa in making the arrest.[2]

---

[2] One of the petitioners wrote:  "Subject was non-compliant, and threatened to punch Officers.  He then refused to comply

After the arrestee was charged with various offenses, including resisting arrest, his defense attorney provided the district attorney for the Bristol district with a videotape of surveillance footage that showed the arrest and Pessoa's use of force on the arrestee.[3] The footage of the incident was inconsistent with the descriptions the petitioners provided in their use-of-force reports.[4] Specifically, the footage showed that the arrestee was physically compliant when one of the petitioners removed his handcuffs, and that Pessoa then struck the arrestee on the left side of his head-shoulder area, causing the arrestee, according to the agreed upon statement of facts, "to be taken to the ground in a violent manner."[5]

Prompted by the videotape, the district attorney initiated a criminal investigation into Pessoa's conduct. This investigation resulted in a grand jury returning fifteen

---

with verbal commands and was taken to the ground in an effort to effect an arrest." The other petitioner wrote: "Subject was disorderly, non-compliant, and threatened to punch officers in the face. Subject was subsequently taken to the ground via an arm bar take down." Officer Michael Pessoa's incident report is not part of the record on appeal.

[3] The arrestee was charged with assault and battery by means of a dangerous weapon (a shod foot), disorderly conduct (subsequent offense), disturbing the peace, threat to commit a crime, assault, and resisting arrest.

[4] The videotape is not part of the record on appeal.

[5] The force used by Pessoa was inconsistent with an arm bar take down.

indictments against Pessoa for crimes involving four separate arrestees, including charges for assault and battery by means of a dangerous weapon causing serious bodily injury, assault and battery, civil rights violations, witness intimidation, filing false police reports, and malicious destruction of property.[6]

During the criminal investigation of Pessoa, the district attorney subpoenaed the petitioners to testify before the grand jury. In light of the apparent inconsistencies between their use-of-force reports and the videotape, the petitioners each asserted his privilege against self-incrimination under the Fifth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The district attorney then sought and obtained orders of immunity pursuant to G. L. c. 233, §§ 20C-20G, from a Superior Court judge. The judge found that each petitioner "did validly refuse to answer questions or produce evidence on the grounds that such testimony or such evidence might tend to incriminate him." The immunity orders provided that the petitioners

> "be granted immunity from prosecution, and not be subjected to any penalty or forfeiture with respect to the transaction, matter or thing concerning which he is compelled to testify or produce evidence, and no testimony concerning said crimes shall be used as evidence against the witness in any Court of the Commonwealth, except in a prosecution for perjury or

---

[6] Following the return of indictments against Pessoa, the district attorney entered a nolle prosequi on the charges against the February 2019 arrestee.

> contempt committed while giving testimony or producing evidence under compulsion of this order."

The grant of immunity compelled the petitioners to "give testimony and produce evidence" before a "jury in these proceedings." During interviews prior to their grand jury testimony and during their grand jury testimony, the petitioners admitted that their use-of-force reports were false.

On August 13, 2019, the district attorney's office filed two motions in the Superior Court. A Superior Court judge ordered both motions impounded, and they were not served on the petitioners. In the first motion, the district attorney sought authority to disclose information from a petitioner's grand jury testimony to defense counsel for criminal defendants in cases unrelated to the prosecution of Pessoa where the petitioner was "a potential witness," asserting that it was obligated to make such disclosures under Brady v. Maryland, 373 U.S. 83, 87-88 (1963) and Giglio v. United States, 405 U.S. 150, 155 (1972) (Brady disclosure motion). Attached to the motion was a proposed discovery letter that identified the relevant petitioners and stated that each is a police officer with the Fall River police department who "has been given a grant of immunity as part of the Pessoa grand jury investigation," and

who "admitted to filing a false police report" as part of that case.[7]

In the second motion, the district attorney sought an order authorizing the disclosure of information concerning the petitioners' grand jury testimony to their municipal employer, the Fall River police department (employer disclosure motion). Attached to the employer disclosure motion was a proposed letter to the Fall River police chief, setting forth the same statements in the proposed Brady disclosure letter.

On or about August 16, 2019, counsel for the petitioners learned that the district attorney's office had filed an

---

[7] The proposed discovery letter stated in relevant part:

"Please be advised of the following potentially exculpatory discovery from an unrelated criminal proceeding:

"1.  Michael Pessoa, a Fall River police officer, was indicted on June 27, 2019 with a 15-count indictment, numbered 1973CR00182.  The indictment includes allegations that he beat arrestees and that he filed false police reports.

"2.  [PETITIONER 1], a Fall River police officer, has been given a grant of immunity as part of the Pessoa grand jury investigation.  [PETITIONER 1] admitted to filing a false police report.

"3.  [PETITIONER 2], a Fall River police officer, has been given a grant of immunity as part of the Pessoa grand jury investigation.  [PETITIONER 2] admitted to filing a false police report.

". . .

"This disclosure is not for public dissemination."

internal affairs complaint against the petitioners with the Fall River police department, and learned of the employer disclosure motion. Shortly thereafter, the petitioners filed a motion in the Superior Court seeking standing to oppose the employer disclosure motion. Petitioners subsequently learned of, and sought to object to, the Brady disclosure motion.

The Superior Court judge allowed the petitioners to oppose both motions.[8] After oral argument, the judge allowed the district attorney's motion to make the Brady disclosure but denied the employer disclosure motion. In allowing the Brady disclosure motion, the judge concluded that the proposed discovery letter "is potentially exculpatory evidence as it may tend to negate the guilt of criminal defendants against whom the officers may be witnesses at trial." The judge ordered the Commonwealth to "notify by means of the proposed discovery letter, all defendants of cases not yet tried and cases now disposed that were tried after the date of the filing of the false police reports, for which the identified officer either prepared a report or is expected to be a witness at trial."

In denying the employer disclosure motion, the judge concluded that the Commonwealth had not "shown that the need for

---

[8] The judge also ordered impounded all filings related to the two motions, as well as the recording of the argument on the motions.

disclosure outweigh[ed] the need for continued secrecy." The judge noted:

> "It is apparent from the public nature of the indictments against Michael Pessoa, the public statements of the Fall River [p]olice [c]hief, and the media coverage on the topic, that the department has substantial information on which to commence disciplinary proceedings, and that the proposed statement the Commonwealth seeks to disclose to the department will provide no additional material information."

The petitioners sought and were granted a stay with respect to the allowance of the Brady disclosure motion, enabling them to seek relief from a single justice of this court pursuant to G. L. c. 211, § 3. The Commonwealth did not petition for relief from the denial of the employer disclosure motion. After a hearing, the single justice reserved and reported the case to the full court. The single justice directed the parties to address the following questions: (1) whether there is a Brady obligation in these circumstances to disclose information to unrelated defendants; (2) whether, if there is a Brady obligation, the Commonwealth may disclose the information even if it was obtained as a result of a judicial order of immunity or in the course of the petitioners' grand jury testimony; (3) whether, if there is a Brady obligation, the Commonwealth must seek prior judicial approval for disclosure; (4) whether the process by which the Commonwealth obtained the petitioners' testimony precludes disclosing information to the petitioners'

municipal employer -- the police department -- concerning the petitioners' invocation of the right against self-incrimination, grant of immunity, and admitted conduct, for purposes of administrative disciplinary proceedings, employee training, or otherwise; and (5) whether, if disclosure to the police department is permissible, the Commonwealth must seek prior judicial approval.

Discussion.  1.  Disclosure of Brady information to other defendants.  Under the due process clause of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, a prosecutor must disclose exculpatory information to a defendant that is material either to guilt or punishment.  See Brady, 373 U.S. at 87; Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 731 (2018) (CPCS).  "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." Giglio, 405 U.S. at 154, quoting Napue v. Illinois, 360 U.S. 264, 269 (1959).  See Commonwealth v. Hill, 432 Mass. 704, 715 (2000), quoting Commonwealth v. Collins, 386 Mass. 1, 8 (1982) ("Evidence tending to impeach the credibility of a key prosecution witness is clearly exculpatory").  Therefore, in the parlance of the criminal justice bar, Giglio information is Brady information:  "[t]he Brady obligation comprehends evidence

which provides some significant aid to the defendant's case,
whether it furnishes corroboration of the defendant's story,
calls into question a material, although not indispensable,
element of the prosecution's version of the events, or
challenges the credibility of a key prosecution witness."
Commonwealth v. Ellison, 376 Mass. 1, 22 (1978).

Apart from the constitutional obligations of disclosure,
our rules of criminal procedure require a prosecutor, as part of
automatic discovery, to disclose to a defendant "[a]ny facts of
an exculpatory nature."[9]  Mass. R. Crim. P. 14 (a) (1) (A) (iii),
as amended, 444 Mass. 1501 (2005).  And our rules of
professional conduct require prosecutors to "make timely
disclosure to the defense of all evidence or information known
to the prosecutor that tends to negate the guilt of the accused

---

[9] In Committee for Pub. Counsel Servs. v. Attorney Gen.
(CPCS), we noted that while Mass. R. Crim. P. 14 "envisions a
broad disclosure requirement for exculpatory facts, the rule
explicitly identifies only a few specific categories of
potentially exculpatory information that a prosecutor must
disclose."  CPCS, 480 Mass. 700, 732 (2018), citing Mass. R.
Crim. P. 14 (a) (1) (A) (i), (viii), (ix) ("Commonwealth must
disclose defendant's statements, 'promises, rewards or
inducements' given to prosecution witnesses, and statements made
during and about identification procedures").  To provide more
detailed guidance to prosecutors, we asked the Supreme Judicial
Court's standing advisory committee on the rules of criminal
procedure "to draft a proposed Brady checklist to clarify the
definition of exculpatory evidence" and establish "a more
thorough baseline of the most likely sources and types of
exculpatory information for prosecutors to consider."  Id.  Rule
14 has not yet been amended to include a Brady checklist.

or mitigates the offense."  Mass. R. Prof. C. 3.8 (d), as appearing in 473 Mass. 1301 (2016).  See also Mass. R. Prof. C. 3.4 (a), as appearing in 471 Mass. 1425 (2015) (lawyer prohibited from concealing evidence or unlawfully obstructing another party's access to evidence); Mass. R. Prof. C. 3.8 (g) (prosecutor may not avoid pursuit of evidence that may aid accused); Mass. R. Prof. C. 3.8 (i) (prosecutor's obligation to disclose postconviction exculpatory evidence).

The petitioners, in essence, make four arguments in support of their position that the district attorney should be barred from making the requested disclosure to criminal defendants in cases where a petitioner either prepared a report or is expected to be a witness at trial:  (1) that the information falls outside the scope of a prosecutor's Brady obligation; (2) that the information would not be admissible at trial and therefore is not exculpatory; (3) that disclosure would violate each petitioner's immunity order; and (4) that disclosure is barred by the rules governing grand jury secrecy.  We address each argument in turn.

a.  Scope of a prosecutor's Brady obligation.  The petitioners contend that the information the district attorney seeks to disclose is not Brady information because the failure to disclose this information would not require a new trial if the defendant were to be convicted.  This argument incorrectly

equates a prosecutor's duty to disclose exculpatory evidence with the standard applied in determining whether the prosecutor's failure to disclose exculpatory evidence is so prejudicial that it requires a new trial.

Under Federal constitutional law, a prosecutor's failure to disclose exculpatory information is not a breach of a prosecutor's constitutional duty to disclose unless the "omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." United States v. Bagley, 473 U.S. 667, 676 (1985), quoting United States v. Agurs, 427 U.S. 97, 108 (1976). Under the standard of materiality applied by the Supreme Court, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, supra at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. This materiality standard applies regardless of whether the undisclosed information was requested by the defendant, either generally or specifically. See id. at 682-83.

This court declined to adopt the Bagley "one size fits all" test as a matter of State constitutional law and instead "adhered to the Agurs test for determining the consequences of a prosecution's failure to comply with a specific request for

exculpatory evidence," which was the test the Supreme Court had supplanted in Bagley. Commonwealth v. Tucceri, 412 Mass. 401, 406 (1992), citing Commonwealth v. Gallarelli, 399 Mass. 17, 21 n.5 (1987). Consequently, under our Declaration of Rights, where the defendant had made a specific request for the information, "a new trial would be required if the undisclosed evidence 'might have affected the outcome of the trial.'" Tucceri, supra at 405, quoting Agurs, 427 U.S. at 104. Where there was no request for the information, or only a general request was made, "a new trial would be required only if the undisclosed evidence 'create[d] a reasonable doubt which did not otherwise exist.'" Tucceri, supra, quoting Agurs, supra at 112.

The petitioners contend that a prosecutor should not disclose exculpatory information unless the prosecutor has a constitutional duty to disclose, and that duty is triggered only where the information would create a reasonable doubt which would not otherwise exist. See Tucceri, 412 Mass. at 405. This argument fails for two reasons.

First, prosecutors have more than a constitutional duty to disclose exculpatory information; they also have a broad duty under Mass. R. Crim. P. 14 (a)(1)(iii) to disclose "[a]ny facts of an exculpatory nature." This duty is not limited to information so important that its disclosure would create a reasonable doubt that otherwise would not exist; it includes all

information that would "tend to" indicate that the defendant might not be guilty or "tend to" show that a lesser conviction or sentence would be appropriate. See CPCS, 480 Mass. at 731, quoting Brady, 373 U.S. at 87 (prosecutor may not withhold evidence that "would tend to exculpate [a defendant] or reduce the penalty"); Collins, 470 Mass. at 267 ("The Commonwealth is required to disclose exculpatory evidence to the defendant, including, as is relevant here, evidence that would tend to impeach the credibility of a key prosecution witness"). Therefore, in Massachusetts, when we speak of a prosecutor's Brady obligation, we mean not only the constitutional obligation to disclose exculpatory information but also the broad obligation under our rules to disclose any facts that would tend to exculpate the defendant or tend to diminish his or her culpability.

Second, even if prosecutors had only their constitutional obligation to disclose, and not the broad duty under our rules, we would not want prosecutors to withhold exculpatory information if they thought they could do so without crossing the line into a violation of the defendant's right to a fair trial. It is true that the constitutional duty of a prosecutor to disclose derives from the defendant's due process right to a fair trial. See Agurs, 427 U.S. at 108 ("unless the omission deprived the defendant of a fair trial, there was no

constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose"). Therefore, a finding regarding a breach of that obligation looks backward in time, at whether the failure to disclose deprived the defendant of a fair trial. But a prosecutor who is deciding whether to disclose exculpatory information must look forward in time, to a trial that has yet to occur, where even an experienced prosecutor may be unsure about the defenses that the defendant will offer or that will emerge from the evidence. As the Supreme Court declared in Agurs, supra:

> "[T]here is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge. Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure."

See Kyles v. Whitley, 514 U.S. 419, 439 (1995) ("a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. . . . This is as it should be" [citation omitted]).

A prosecutor should not attempt to determine how much exculpatory information can be withheld without violating a defendant's right to a fair trial. Rather, once the information is determined to be exculpatory, it should be disclosed -- period. And where a prosecutor is uncertain whether information

is exculpatory, the prosecutor should err on the side of caution and disclose it.  See Commonwealth v. St. Germain, 381 Mass. 256, 262 n.10 (1980), quoting Commentary to A.B.A. Standards for Criminal Justice, Standards Relating to Discovery and Procedure Before Trial 2.1(d) (Approved Draft 1970) ("We reiterate[] that 'prosecuting attorneys [should] become accustomed to disclosing all material which is even possibly exculpatory, as a prophylactic against reversible error and in order to save court time arguing about it'").[10]

b.  Consequence of admissibility of impeachment information on Brady obligation.  The petitioners also argue that prosecutors have no obligation to disclose the petitioners' false statements because their prior misconduct would not be admissible in evidence at trial in any unrelated criminal case. We disagree.

The petitioners are correct that, in the absence of a conviction, "[i]n general, specific instances of misconduct showing the witness to be untruthful are not admissible for the purpose of attacking or supporting the witness's credibility."

_____

[10] Where a prosecutor recognizes information to be exculpatory, but is unsure whether it should be disclosed, "due to a concern regarding privilege or work product, or for any other reason, the prosecutor must file a motion for a protective order and must present the information for a judge to review in camera." CPCS, 480 Mass. at 733, citing Mass. R. Crim. P. 14 (a) (6).

Mass. G. Evid. § 608(b) (2020), citing Commonwealth v. Bregoli, 431 Mass. 265, 275 (2000), and Commonwealth v. LaVelle, 414 Mass. 146, 151 (1993). See Mass. G. Evid. § 609(a) (2020) ("A party may seek to impeach the credibility of a witness by means of the court record of the witness's prior conviction or a certified copy"). But we have "chiseled a narrow exception" to this general rule, "recognizing that in special circumstances the interest of justice forbids strict application of the rule." LaVelle, supra, citing Commonwealth v. Bohannon, 376 Mass. 90, 94 (1978), S.C., 385 Mass. 733 (1982).[11]

In Bohannon, 376 Mass. at 94, we declared, "[w]hen evidence concerning a critical issue is excluded and when that evidence might have had a significant impact on the result of the trial, the right to present a full defense has been denied." In that case, a critical issue at trial was the credibility of the complainant, who testified that she did not consent to sexual intercourse with the defendant, and the evidence that might have

---

[11] In Commonwealth v. Almonte, 465 Mass. 224, 241 (2013), we noted that "under the Fed. R. Evid. 608(b), a party on cross-examination of a witness may inquire into the details of prior instances of misconduct if probative of the witness's character for veracity." Because the benefit to the defendant in that case "of an expanded evidentiary rule concerning impeachment on the issue of veracity would be marginal at best," we left "to another day the question whether we should follow the guide of the Fed. R. Evid. 608(b), and adopt such a rule more generally." Id. at 242. This is not the day, or the case, where we need to address that question.

had a significant impact on the result of the trial were hospital records that revealed that "the complainant had made a number of unsubstantiated, and apparently false, accusations of rape." Id. at 93. We concluded that it was reversible error for the judge to have prevented the defendant from impeaching the victim-witness with this evidence of prior false accusations. See id. at 95.

A judge has the discretion to decide whether the credibility of a police officer is a critical issue at trial and whether the officer's prior false statements in a separate matter might have a significant impact on the result of the trial, such that the prior misconduct should be admitted in the interest of justice. See Commonwealth v. Lopes, 478 Mass. 593, 606 (2018). In Lopes, we concluded that the judge did not abuse his discretion by preventing the defendant from impeaching a police officer who was one of the Commonwealth's key eyewitnesses in a homicide case "with information that the Boston police department had suspended [the police officer] five years earlier for, among other things, lying in an internal affairs investigation on a personal matter." Id. We noted that the alleged conduct was "not material" to the homicide investigation where it took place five years before the murder, "did not result in a criminal conviction or even a criminal

charge," and was "not related to how [the officer] conducted police investigations."  Id.

Our delineation of these factors suggests that a judge, in deciding whether to allow a police officer witness in the interest of justice to be impeached with prior misconduct, may consider the age of the prior misconduct, the strength of the evidence of the prior misconduct and the simplicity of establishing it, and whether the prior misconduct is probative of how the officer conducts police investigations.[12]  As to the age of the misconduct, if it happened so long ago that it would not be admissible for impeachment had it resulted in a criminal conviction, see Mass. G. Evid. § 609, it would not likely be admissible in the absence of a conviction.  As to the strength of the evidence of the prior misconduct and the simplicity of establishing it, a judge may consider whether admitting evidence of the misconduct will result in a trial within a trial to resolve whether it happened or how it happened.  As to whether the prior misconduct is probative of how the officer conducts police investigations, a judge may consider whether the misconduct reflects a willingness to lie to win a conviction or

---

[12] We also note that our conclusion in Commonwealth v. Lopes, 478 Mass. 593, 606 (2018), that the judge did not abuse his discretion in barring such impeachment, does not mean that it would have been an abuse of discretion for the judge to have admitted such evidence.

instead involves matters that, although serious, do not bear on the integrity of police investigations, such as taking unauthorized sick time or inflating overtime hours. Concealing police brutality against an arrestee, whether by the officer or a fellow officer, or making false statements that might lead to an unjust conviction are for law enforcement officers the equivalent of high crimes and misdemeanors in this regard. All of these factors suggest that the petitioners' prior false statements might be admissible in a case where the credibility of their testimony is a critical issue.

We do not conclude that the exculpatory information at issue will always be or could never be admissible as impeachment evidence in an unrelated criminal case where one of the petitioners is a witness. All we conclude is that the information should be disclosed to unrelated defendants so that the trial judge may rule on its admissibility if the defendant were to seek its admission.

Moreover, the ultimate admissibility of the information is not determinative of the prosecutor's Brady obligation to disclose it. Where the information, as here, demonstrates that a potential police witness lied to conceal a fellow officer's unlawful use of excessive force or lied about a defendant's conduct and thereby allowed a false or inflated criminal charge to be prosecuted, disclosing such information may cause defense

counsel, or his or her investigator, to probe more deeply into the prior statements and conduct of the officer to determine whether the officer might again have lied to conceal the misconduct of a fellow police officer or to fabricate or exaggerate the criminal conduct of the accused.

c.  Consequence of order of immunity on Brady obligation. The petitioners contend that, where exculpatory information is obtained from a witness's immunized testimony, prosecutors should not disclose the information to defendants in unrelated cases because the orders of immunity protect immunized witnesses from the adverse consequences that might result from such disclosure.  This argument misreads the scope of immunity provided by the immunity order.

The Fifth Amendment states in relevant part:  "No person . . . shall be compelled in any criminal case to be a witness against himself."  Article 12 states in part:  "No subject shall be held to answer for any crimes or offense, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself." As is apparent from the language of the Fifth Amendment and art. 12, a witness's right to refuse to testify before a tribunal by invoking the privilege against self-incrimination is available only where the witness's testimony might incriminate the witness with respect to a crime, either by the testimony itself or by

evidence derived from that testimony. See Commonwealth v. Martin, 423 Mass. 496, 502 (1996), quoting Commonwealth v. Funches, 379 Mass. 283, 289 (1979) ("The privilege afforded not only extends to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute"). A witness may not invoke the privilege simply because the testimony, when it becomes known, will cause the witness to be fired from a job or injure the witness's reputation in the community. See Pixley v. Commonwealth, 453 Mass. 827, 832 (2009), citing Martin, supra at 502-503 (circumstances for invoking privilege "must clearly indicate a possibility of self-incrimination").

An immunity order is sometimes referred to as a compulsion order because it grants immunity to the witness that is "coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege." Kastigar v. United States, 406 U.S. 441, 453 (1972). Under the Fifth Amendment, testimony may be compelled through an order granting use immunity that prohibits only the use, in any criminal case, of compelled testimony and the use of any evidence directly or indirectly derived from that compelled testimony. See id. at 453. However, under the Massachusetts Constitution and the governing

statutes, G. L. c. 233, §§ 20C-20G, testimony may be compelled only through an order granting transactional immunity that provides "absolute immunity from subsequent prosecution based upon any transaction, matter, or occurrence about which an immunized witness testified or produced evidence." Attorney Gen. v. Colleton, 387 Mass. 790, 795 (1982). See Commonwealth v. Austin A., 450 Mass. 665, 668 (2008). The scope of transactional immunity is set forth in G. L. c. 233, § 20G:

> "A witness who has been granted immunity as provided in section 20E shall not be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction matter, or thing concerning which he is so compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal or civil proceeding against him in any court of the commonwealth, except in a prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion, pursuant to section 20C or 20E" (emphasis added).[13]

"[I]t would be difficult to imagine an immunity more complete." Matter of a John Doe Grand Jury Investigation, 405 Mass. 125, 130 (1989), quoting Cabot v. Corcoran, 332 Mass. 44, 51 (1954).

---

[13] The immunity orders in this case similarly stated that the petitioners "be granted immunity from prosecution, and not be subjected to any penalty or forfeiture with respect to the transaction, matter or thing concerning which he is compelled to testify or produce evidence against the witness in any Court of the Commonwealth, except in a prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion of this order."

Under § 20G, a witness with immunity may not be criminally prosecuted for any transaction about which the witness is compelled to testify. Nor may the Commonwealth seek any civil penalty or forfeiture regarding such a transaction. And apart from the prohibition against criminal and civil prosecution regarding matters raised during compelled testimony, the testimony itself may not be "used as evidence in any criminal or civil proceeding against" the witness in a court of law, except where the immunized testimony itself is the subject of a prosecution against the witness for perjury or contempt of court. See G. L. c. 233, § 20G.

If an immunized witness testifies at trial, however, the testimony is as public as the trial itself, and nothing in the order of immunity protects the witness from other adverse consequences that may arise from the content of the witness's testimony. If the witness, in the course of providing immunized testimony, admits that he lied, cheated, or killed, the witness may not be prosecuted for that illegal conduct, criminally or civilly; but nothing in the immunity statute or order protects the witness from being fired by his employer or shunned by his community because of the misconduct he revealed. And with respect to all persons other than the witness, immunized testimony is no different from any other testimony, except that it was compelled.

The petitioners argue that the disclosure of their testimony would "penalize them for invoking their privilege against self-incrimination" in violation of their orders of immunity and the statute. But disclosure is not the penalty from which they are protected by the immunity orders; the petitioners were granted immunity from prosecution, not from publication or disclosure. Therefore, the fact that testimony was compelled is irrelevant to the prosecutor's Brady obligation to provide exculpatory information. An immunized witness, like others who are not immunized, may prefer that the testimony not be disseminated by the prosecutor, especially if it would reveal the witness's dirty deeds, but that preference does not affect whether the information is exculpatory or whether it should be furnished to other defendants. Once disclosed, the immunized testimony may be used to impeach the immunized witness, provided that the testimony is not being used against the witness in a criminal or civil prosecution other than for perjury. In sum, a prosecutor's obligation to disclose exculpatory information is the same for immunized testimony as for all other testimony. There is no higher Brady standard applied for a prosecutor to disclose immunized testimony.

d. Consequence of grand jury secrecy on Brady obligation. Finally, the petitioners argue that, "[g]iven that Brady does not compel the disclosure of the information, the Commonwealth

should not be permitted to disclose it in light of the rule that grand jury proceedings are to remain secret."  As discussed supra, the premise of this argument is incorrect -- a prosecutor is required to disclose the information at issue to unrelated defendants pursuant to the obligation to disclose exculpatory information.  The petitioners, however, present an alternative argument -- that the Commonwealth should be required to obtain judicial approval before making such a disclosure.  We address the alternative argument.[14]

It is certainly true that "[t]he requirement that grand jury proceedings remain secret is deeply rooted in the common law of the Commonwealth."  Globe Newspaper Co. v. Police Comm'r of Boston, 419 Mass. 852, 865 (1995), quoting WBZ-TV4 v. District Attorney for the Suffolk Dist., 408 Mass. 595, 599 (1990).  It is also true that "[s]ecrecy is of fundamental importance to grand jury proceedings."  Commonwealth v. Holley, 476 Mass. 114, 118 (2016).

> "[S]everal interests are served by maintaining strict
> confidentiality, 'such as protection of the grand jury
> from outside influence, including influence by the
> news media; protection of individuals from notoriety
> and disgrace; encouragement of free disclosure of
> information to the grand jury; protection of witnesses

---

[14] After the immunity order issued, the petitioners agreed to be interviewed by the prosecutor prior to their grand jury appearance.  In view of the conclusions we draw, we need not address whether these interviews are protected by the rules governing grand jury secrecy.

from intimidation; and enhancement of free grand jury deliberations.'"

Globe Newspaper Co., supra at 865-866, quoting Matter of a John Doe Grand Jury Investigation, 415 Mass. 727, 729 (1993).

Under Mass. R. Crim. P. 5 (d), as appearing in 442 Mass. 1505 (2004), "[a] person performing an official function in relation to the grand jury may not disclose matters occurring before the grand jury except in the performance of his or her official duties or when specifically directed to do so by the court." A prosecutor presenting evidence at a grand jury is certainly "performing an official function in relation to the grand jury," so the issue presented is whether the disclosure of exculpatory evidence to defense counsel is within the scope of the "the performance of his or her official duties."

There can be no doubt that the use of inculpatory grand jury testimony to prosecute a defendant in a criminal case is within the scope of the performance of a prosecutor's official duties. The disclosure of exculpatory grand jury testimony to defense counsel is equally within the scope of the performance of a prosecutor's official duties. For a prosecutor, disclosure of information that may permit a defendant to prove his or her innocence should be equally as important as securing the conviction of a guilty party:

"The [prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose

> obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.  As such, he [or she] is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer."

Berger v. United States, 295 U.S. 78, 88 (1935).  See Jackson, The Federal Prosecutor, reprinted in 24 J. Am. Jud. Soc'y 18, 20 (1940) ("A sensitiveness to fair play and sportsmanship is perhaps the best protection against the abuse of power, and the citizen's safety lies in the prosecutor who tempers zeal with human kindness, who seeks truth and not victims, who serves the law and not factional purposes, and who approaches his [or her] task with humility").[15]

We therefore conclude that the disclosure to defense counsel of exculpatory information arising from a grand jury proceeding is as much a part of a prosecutor's official duty as the presentation of inculpatory evidence at trial.  Because the disclosure of exculpatory grand jury information is within the performance of a prosecutor's official duties under rule 5 (d), it may be disclosed without an order of a court.  A judge would have to review the disclosure to defense counsel only if the

---

[15] United States Attorney General Robert H. Jackson delivered this address at the Second Annual Conference of United States Attorneys in Washington, D.C., on April 1, 1940.  See Jackson, The Federal Prosecutor, reprinted in 24 J. Am. Jud. Soc'y 18, 18 (1940).

prosecutor sought a protective order limiting further dissemination of the information.

Consequently, as to the first three issues identified by the single justice, we conclude, as did the district attorney, that the prosecutors here have a Brady obligation to disclose the exculpatory information at issue to unrelated criminal defendants in cases where a petitioner is a potential witness or prepared a report in the criminal investigation. That obligation remains even though that information was obtained in grand jury testimony compelled by an immunity order. And the district attorney may fulfill that obligation without prior judicial approval; a judge's order is needed only for issuance of a protective order limiting the dissemination of grand jury information.

More broadly, we conclude that where a prosecutor determines from information in his or her possession that a police officer lied to conceal the unlawful use of excessive force, whether by him- or herself or another officer, or lied about a defendant's conduct and thereby allowed a false or inflated criminal charge to be prosecuted, the prosecutor's obligation to disclose exculpatory information requires that the information be disclosed to defense counsel in any criminal case where the officer is a potential witness or prepared a report in the criminal investigation.

We note that the United States Department of Justice, through its "Policy Regarding the Disclosure to Prosecutors of Potential Impeachment Information Concerning Law Enforcement Agency Witnesses," known as its "Giglio Policy," has established a procedure whereby Federal prosecutors obtain potential impeachment information from Federal investigative agencies, such as the Federal Bureau of Investigation, regarding law enforcement agents and employees who may be witnesses in the cases they prosecute. United States Department of Justice, Justice Manual, Tit. 9-5.100 (updated Jan. 2020) (Manual), https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings [https://perma.cc/NKL2-YZ2J]. According to the policy:

> "Prosecutors should have a candid conversation with each potential investigative agency witness and/or affiant with whom they work regarding any on-duty or off-duty potential impeachment information, including information that may be known to the public but that should not in fact be the basis for impeachment in a federal criminal court proceeding, so that prosecuting attorneys can take appropriate action, be it producing the material or taking steps to preclude its improper introduction into evidence."

Id. at Tit. 9-5.100(1). In addition, each United States Attorney's office designates a "requesting official" who may ask an investigative agency's official to provide potential impeachment information regarding an agency employee associated with the case or matter being prosecuted. Id. at Tit. 9-

5.100(2)-(4). When a case is initiated within the United States Attorney's office, the prosecutor responsible for the case, to supplement the information obtained directly from the agency employees involved in the case, may ask the office's requesting official to obtain from the agency's designated official any potential impeachment information regarding those agency employees. Id. at Tit. 9-5.00(4). Potential impeachment information may include, but is not limited to:

"i) any finding of misconduct that reflects upon the truthfulness or possible bias of the employee, including a finding of lack of candor during a criminal, civil, or administrative inquiry or proceeding;

"ii) any past or pending criminal charge brought against the employee;

"iii) any allegation of misconduct bearing upon truthfulness, bias, or integrity that is the subject of a pending investigation;

"iv) prior findings by a judge that an agency employee has testified untruthfully, made a knowing false statement in writing, engaged in an unlawful search or seizure, illegally obtained a confession, or engaged in other misconduct;

"v) any misconduct finding or pending misconduct allegation that either casts a substantial doubt upon the accuracy of any evidence -- including witness testimony -- that the prosecutor intends to rely on to prove an element of any crime charged, or that might have a significant bearing on the admissibility of prosecution evidence . . . ;

"vi) information that may be used to suggest that the agency employee is biased for or against a defendant . . . ; and

"vii) information that reflects that the agency employee's ability to perceive and recall truth is impaired."

Id. at Tit. 9-5.100(c)(5).

This policy is not intended to grant any rights to defendants and does not have the force of law.  Id. at Tit. 9-5.100 (preface).  But it reflects the department's recognition of the need for prosecutors to learn of potential impeachment information regarding all the investigating agents and employees participating in the cases they prosecute, so that they may consider whether the information should be disclosed to defense counsel under the Brady and Giglio line of cases.  See id.  We do not possess the authority to require the Attorney General and every district attorney in this Commonwealth to promulgate a comparable policy, but we strongly recommend that they do.[16]

---

[16] WBUR radio recently reported that three of the eleven district attorneys in Massachusetts maintain some form of a list of police officers who were "flagged by prosecutors as either having engaged in or been accused of misconduct that the [district attorney's] office might legally need to disclose" to defense counsel because the information is relevant to the credibility of the officers.  See WBUR News, "Few Mass. DAs Keep Police Watch Lists.  Constitutional Questions Exist For Those Who Don't," Aug. 18, 2020, https://www.wbur.org/news /2020/08/18/police-brady-lists-middlesex-district-attorney [https://perma.cc/NE45-4444].

In addition, we note that prosecutive offices in a number of other States have established policies or protocols governing the discovery and disclosure of potential exculpatory impeachment information regarding law enforcement witnesses.  See, e.g., Memorandum of the New Jersey Attorney General, Disclosure of Exculpatory and Impeachment Evidence in Criminal

2.  <u>Disclosure of false statements to police department</u>.

As earlier noted, the judge denied the district attorney's motion for an order authorizing the disclosure of information concerning the petitioners' grand jury testimony to the Fall River police department.  The judge concluded that the department already had substantial information to commence disciplinary proceedings and that the information the district attorney sought to disclose would provide the department with "no additional material information."  Although the district attorney does not challenge the judge's order, the single justice asked the parties to address in their briefs, in essence, whether disclosure to the police chief would have been permissible if the police department did not already know of the

Cases, Brady and Giglio Practical Application, Investigative Employees and Potential <u>Giglio</u> Material (June 18, 2019), at 5, https://www.nj.gov/oag/dcj/policies.html [https://perma.cc/YP9W-LY2R ] (noting that "[i]t is imperative that investigative personnel assist with the prosecuting agency's legal duty to review and, if necessary, disclose evidence that may impact the credibility of potential investigative State witnesses," and providing examples of <u>Giglio</u> material); Memorandum of the New Hampshire Attorney General, The Exculpatory Evidence Protocol and Schedule (March 21, 2017), https://www.doj.nh.gov/criminal /documents/exculpatory-evidence-20170321.pdf [https://perma.cc /GU6X-HUK9 ] (creating protocol for an exculpatory evidence schedule); Washington Association of Prosecuting Attorneys, Model Policy, Disclosure of Potential Impeachment Evidence for Recurring Investigative or Professional Witnesses (June 19, 2013), http://waprosecutors.org/manuals/ [https://perma.cc/RHE2-L3Q8] (model guidelines for creation and maintenance of potential impeachment evidence lists for law enforcement witnesses).

petitioners' false statements, and whether any such disclosure would require prior judicial approval.

We generally are reluctant to address issues that are not the subject of a live dispute, or orders that have not been challenged by any of the parties, but we respect the single justice's implicit recognition that guidance on these matters is needed. We therefore will provide guidance, albeit limited to the type of false statements at issue in this case. In providing this guidance, we do not evaluate the merits of the judge's decision in the case. Indeed, we address a factual circumstance quite different from that addressed by the judge -- where the police chief, in the absence of the requested disclosure by the district attorney, would not know that immunized grand jury testimony revealed the misconduct of two police officers in the department.

We have already declared, supra, that where a prosecutor determines that a potential police witness lied to conceal a police officer's unlawful use of excessive force, or lied about a defendant's conduct and thereby allowed a false or inflated criminal charge to be prosecuted, the prosecutor's obligation to disclose exculpatory information requires that the information be disclosed to defense counsel in any case where the officer is a potential witness or prepared a report in the criminal investigation. Where this disclosure must be made to defense

counsel, it must also be made to the police chief of the department because the consequence of such disclosure is to jeopardize or, at a minimum, complicate the successful prosecution of any criminal case where the police officer played a significant role.  It would make no sense for the prosecutor and defense counsel to possess this information, and for the police chief to be deprived of the same information.  The police chief needs this information to determine whether to fire or otherwise discipline the officer, place the officer on desk duty, or take other steps to ensure the integrity of the department and its criminal cases.  Because the disclosure of this information arises from the prosecutor's Brady obligation, no prior judicial approval is required to make this disclosure, even if it arises from immunized grand jury testimony.

If, however, other police misconduct is revealed through a grand jury investigation that does not require the prosecutor under his or her Brady obligation to disclose the misconduct to defense counsel in any case where the officer is a potential witness or prepared a report in the criminal investigation, prior judicial approval should be obtained before this grand jury information may be revealed to the officer's police chief. See Mass. R. Crim. P. 6 (d).  See also Petition of Craig v. United States, 131 F.3d 99, 102-103 (2d Cir. 1997) (holding that Fed. R. Crim. P. 6 [e] [3] contains permissive, not exhaustive,

list of reasons for release of grand jury materials, and affirming nonexhaustive list of factors judges may consider when evaluating "special circumstances" motions to release grand jury materials).  In the absence of a live dispute, and the facts that would accompany such a dispute, we do not opine as to the circumstances when, if at all, such approval should be granted.

Conclusion.  The case is remanded to the county court for entry of a judgment denying the petition under G. L. c. 211, § 3, thereby leaving intact the judge's order allowing the district attorney's motion to make the Brady disclosure.

So ordered.